**TRANSAMERICA INSURANCE SERVICES, Defendant–Appellant,**

v.

**Andrew J. KOPKO, as Trustee, 545 Service Corporation and Citizens Development Company.**

**No. 37A03–8805–CV–150.**

Court of Appeals of Indiana, Third District.

Aug. 29, 1990.

James D. McQuillan, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for defendant-appellant.

Fred M. Cuppy, Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, for appellee.

GARRARD, Judge.

This appeal stems from a summary judgment in favor of Andrew J. Kopko (Kopko) as trustee of a land development trust doing business under the name East Dyer Development Company (East Dyer). In Kopko's second declaratory judgment action, the court determined that Kopko's insurer, Transamerica Insurance Services (Transamerica), had a duty to defend Kopko in a federal Racketeer Influenced and Corrupt Organizations Act (RICO) and state law based suit pending against Kopko in the federal district court.

In 1977 a joint venture between 545 service Corporation and Citizens Development Corporation to develop a subdivision in Dyer, Indiana resulted in the creation of East Dyer. In 1977 and again in 1979, soil samples were taken to determine if the property was suitable for development. Kopko received the report as prepared by Lewis K. Walter, Jr. Associates (Walter). The Walter report revealed compressibility problems in the sub-soil conditions and recommended foundational and footing specifications as well as removal and replacement of compressible organic peat material. Kopko claims to have forgotten about the Walter report with respect to the events here in question.

Waggoner Builders, Inc. (Waggoner) purchased Lot 98 in East Dyer's Castlewood subdivision. Waggoner encountered sub-soil problems which it cured by excavating and backfilling with more suitable soil. After selling the house it built on that lot in late 1982, Waggoner then purchased Lot 96. East Dyer gave Waggoner a credit against the purchase price of the new lot for costs Waggoner had incurred in correcting the soil conditions on the previous lot. Waggoner then built on Lot 96 the

house that Thomas and Ruthann Reynolds (Reynolds) ultimately purchased.

The Reynolds' home "settled" allegedly due to defective sub-soil conditions and the house suffered structural damage. In January of 1985 the Reynolds sued, among others, Waggoner, Kopko, East Dyer, 545 Corporation, and Citizens Development Corporation for compensatory and punitive damages. That complaint filed in the Lake Superior Court named Kopko, East Dyer, 545 Corporation, and Citizens Development Corporation (collectively referred to as Kopko) and as against those defendants sounded in tort for intentional and fraudulent misrepresentation.

Kopko forwarded the complaint to Transamerica who denied coverage. Kopko then filed a declaratory judgment action seeking a determination as to whether the Transamerica policy provided coverage. Both parties moved for summary judgment and Transamerica's motion was granted on the grounds that the injury complained of was not an "occurrence" as defined in the policy. The court noted, however, that if the Reynolds later made allegations of negligence, its ruling would not be binding.

In January of 1987 the Reynolds filed suit against Kopko in the United States District Court in Hammond, Indiana. Federal jurisdiction was based on the federal RICO statute, 18 U.S.C. § 1961 *et seq.* Their amended 41 page complaint incorporated multiple theories of recovery pursuant to that court's pendent jurisdiction.

In response to the Reynolds' federal action, Kopko sought the Jasper Superior Court's determination as to whether that action was covered under the Transamerica policy. Cross motions for summary judgment were again filed. Transamerica asserted that the Reynolds' suit did not arise out of an "occurrence" as defined in Kopko's policy and that the alleged property damage was to premises alienated by Kopko and, therefore, under a specific exclusion. The trial court found that to so rule would defeat Kopko's purpose for having obtained the insurance policy. The trial court found coverage and ordered Trans-

america to provide Kopko's defense. From that ruling Transamerica appeals.

Transamerica presents us with two issues. They may be stated as follows:

1. Whether there was no "occurrence ... an accident neither expected nor intended" when a land development trust failed, negligently or intentionally, to reveal defective sub-soil conditions to real estate purchasers so as to preclude Transamerica's entry to defend.

2. Whether, when sued by homeowners for structural damages due to sub-soil conditions as to a lot the developer conveyed to the builder, that land developer is covered by an insurance policy that specifically excludes from coverage any property damage to premises alienated by the insured.

Before delving into the specific issues of this appeal, we first note that:

The duty of a liability insurer to provide a defense when an insured may be legally obligated to a third party, ... [has] been the subject of much litigation. Moreover, as the expenses incident to defending against tort claims have increased, this aspect of the liability insurance arrangement has become and is likely to continue to be a matter of substantial concern for both insurers and insureds.

Keeton and Widiss, *Insurance Law: A Guide to Fundamental Principles, Legal Doctrines and Commercial Practices,* § 9.1(a) (1988).

Courts, including this one, have held repeatedly that an insurer's duty to defend is broader than its duty to pay. *See, e.g., Heshelman v. Nationwide Mut. Fire Ins. Co.* (1980), Ind.App., 412 N.E.2d 301, 302; *Seaboard Surety Co. v. Gillette Co.* (1984), 64 N.Y.2d 304, 310, 476 N.E.2d 272, 275, 486 N.Y.S.2d 873, 876 ("Though the policy coverage is often denominated as 'liability insurance,' where the insurer has made promises to defend 'it is clear that [the coverage] is, in fact, litigation insurance as well.'" (citations omitted); *First Ins. Co. of Hawaii, Inc. v. State by Minami* (1983), 66 Hawaii 413, 417-18, 665 P.2d 648, 652;

*Conway v. Country Casualty Ins. Co.* (1982), 92 Ill.2d 388, 394, 65 Ill.Dec. 934, 936, 442 N.E.2d 245, 247. That oft recited holding "is understood to mean that the duty to provide a defense exists in some instances in which an insurer will not be obligated to provide indemnification for an insured's liability to a third party." Keeton and Widiss, *Insurance Law* at § 9.1(b); *see also* 7C J. Appleman, *Insurance Law & Practice* § 4682 (Burdal ed. 1979).

We have observed before that "the traditional view is that a duty to defend is determined solely by the allegations in a complaint." *Cincinnati Ins. Co. v. Mallon* (1980), Ind.App., 409 N.E.2d 1100, 1105. However, in the *Cincinnati* decision Judge Buchanan concluded that the insurer "may go beyond the face of the complaint and refuse to defend based upon the factual underpinnings of the claim." *Id.*[1] The *Cincinnati* majority went on to hold that "it is the nature of the claim and not its merits that determines the duty to defend." *Id.* That is:

> An insurer is obligated to provide a defense whenever the allegations state facts, which if true, are within the ambits of the protection promised the policyholder.

7C J. Appleman, *Insurance Law & Practice* § 4682 at 123. The insurer's duty to defend is not avoided, however, by deficiencies in the plaintiff's complaint against the insured so long as under any reasonable intendment of the pleadings covered liability of the insured can be inferred.

*Issue I: "Occurrence" and the duty to defend.*

We are concerned with whether the Reynolds' claims for relief in their federal court action are covered by the insurance policy issued to Kopko by Transamerica. Transamerica contends that Kopko's actions as calculated business decisions fall outside the definition of a covered "occurrence" and, in the alternative, the exclusion for alienated premises relieves Trans-

america of any obligation to defend or indemnify Kopko concerning the lot in question.

An insurance policy is merely a contract and must be interpreted in accordance with the law of contracts. *American States Ins. Co. v. Aetna Life and Casualty Co.* (1978), 177 Ind.App. 299, 308, 379 N.E.2d 510, 516. Thus an insurer "is free to determine by its contract what risks it is undertaking to insure, provided policy provisions do not violate statutory mandates or are not against public policy." *Cincinnati, supra,* 409 N.E.2d at 1103. Here, Transamerica's insurance policy provides, "The company shall have the right and duty to defend any suit against the insured seeking damages on account of … bodily injury or property damages…." (R. 277).

The right and duty to defend, Transamerica argues, is triggered by an "occurrence" and that term is defined to mean "an accident … neither expected nor intended from the standpoint of the insured." (R. 280).

The Reynolds' amended complaint as filed in the district court asserted jurisdiction per the federal RICO statute, 18 U.S.C. § 1961, and included state law claims pursuant to that court's pendent jurisdiction. The claims for relief were set forth in nine counts. Count I stated the RICO claim; Count II alleged intentional misrepresentation; Count III asserts that the defendants participated in a civil conspiracy to fraudulently conceal the sub-soil conditions from purchasers; Count IV sounds in negligence and in fraudulent misrepresentation as to the duty to discover and reveal soil conditions; Count V sets forth a claim based upon the negligent and fraudulent failure to supervise development and promotional activities relative to the subdivision; Count VI states a claim for breach of an implied warranty in regard to the suitability of the soil on the lot for residential construction purposes;

---

[1] Judge Sullivan's dissent conceded that "it is well settled that an insurer's duty is determined by the allegations of the complaint coupled with those facts known to or ascertainable by the insurer after a reasonable investigation." *Cincinnati, supra,* 409 N.E.2d at 1106 (Sullivan, J. dissenting).

**326** ◾

Count VII is directed against Kopko in his individual capacity as trustee; Count VIII again contends that the defendants were engaged in a civil conspiracy to conceal the soil conditions from purchasers; and finally, Count IX claims that the Reynolds' own insurer breached its contract.

Certainly a number of the Reynolds' claims allege that Kopko's acts were of an intentional nature, but a few of the counts do sound in negligence. If Kopko's negligence could result in any liability, Transamerica must provide a defense. We are not saying that Transamerica will be required to indemnify Kopko for the damages resulting from any intentional or reckless acts. Instead, this insurer will indemnify Kopko for any liability due to its negligence, and because certain aspects of the Reynolds' claim sound in negligence, Transamerica must provide Kopko's defense. *See, e.g., Western Casualty and Surety Group v. Coloma Township* (1985), 140 Mich.App. 516, 364 N.W.2d 367, 368 ("An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." (citations omitted); *First Ins. Co. of Hawaii, Inc., supra,* 66 Hawaii at 417, 665 P.2d at 652 ("[W]here a suit raises a potential for indemnification liability of the insurer, the insurer has a duty to accept the defense of the entire suit...."); 7C J. Appleman, *Insurance Law & Practice* § 4684.01 at 102, 106.[2] *Contra Couch on Insurance 2d* (Rev. ed.) § 51:47 ("Where a complaint in an action against one to whom a policy of liability insurance has been issued states different causes of action ... and one such cause is

within the coverage ... but others may not be ... the insurer is bound to defend with respect to those [claims] which, if proved, are within the coverage.")

*Issue II: Alienated Premises Exclusion*

◾ The insuring agreement in the policy provides:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage *to which this insurance applies,* caused by an occurrence. (emphasis added)

The exclusion relied on by Transamerica provides that "[t]his insurance does not apply ... to property damage ... to premises alienated by the named insured arising out of such premises or any part thereof...."

Certainly the exclusion is no model for clarity and the circuitous language of the insuring agreement is of no aid in its interpretation. Even so, it is difficult to term it ambiguous. Its plain language excludes coverage for property damage to premises alienated by the named insured where the damage arises out of the premises or any part thereof. It has been said that the intent and purpose of such a clause is to deny coverage to an insured for damages to the insured's own "products" due to their faulty construction. *Taylor–Morley–Simon, Inc. v. Michigan Mut. Ins. Co.* (E.D.Mo.1986), 645 F.Supp. 596, 597, 600. On the other hand, exclusions are strictly construed and to be applicable they must clearly and unmistakably bring the act or omission in question within their scope. *Evans v. National Life Acc. Ins. Co.*

---

**2.** Courts and commentators have noted that where a third party's complaint against the insured states claims mainly outside the scope of risks insured against, but at the same time some counts, as here, are arguably within the policy, a conflict of interest arises. The insurer characterizes the action as outside the policy and, of course, the insured demands the benefit of its insurance premiums. The conflict can be avoided by permitting the insured to retain its own counsel (subject to the approval of the insurer) and thereby transforming the duty to defend "into an obligation to reimburse the insured for ... defense costs related to the claims

that are within ... the coverage. [footnotes omitted]." Keeton and Widiss, *Insurance Law* §§ 7.6(d)(6) and 9.3(1). That resolution of this conflict of interest would alleviate the apparent unfairness in requiring the insurer to defend an entire action where only a small aspect thereof relates to a covered risk. Moreover, that resolution would avoid the disruption of the orderly adjudication of the main claim caused where the insurer dismisses its counsel following success in its efforts to confine the third party's action to a recovery that the policy does not cover.

(1984), Ind.App., 467 N.E.2d 1216; *Asbury v. Indiana Union Mut. Ins. Co.* (1982), Ind.App., 441 N.E.2d 232.

Thus, the court in *Taylor–Morley–Simon* recognized that the exclusion would have no application for damage to work completed by others than the insured. 645 F.Supp. at 600, 601.

In the present case it is undisputed that the premises sold by Kopko consisted simply of Lot 96. The home to which damage was claimed was not alienated by Kopko. It was subsequently constructed by Waggoner. Thus, the court did not err in finding the exclusion inapplicable. *Taylor–Morley–Simon, supra.*

Affirmed.

HOFFMAN, P.J. concurs.

STATON, J. dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion because an insurance company should not be unnecessarily burdened with the defense of expensive litigation when the nature of the claim has been excluded by the express terms of the insurance contract. There was no "occurrence" as that term is defined by the contract of insurance. Too, the alienation of the premises by the insured to Waggoner triggered the exclusion clause of the insurance contract. When the nature of the claim is obviously not covered by the policy of insurance, there is no duty to defend. *American States Ins. Co. v. Aetna Life & Casualty Co.* (1978), 177 Ind.App. 299, 379 N.E.2d 510, 516; *Cincinnati Ins. Co. v. Mallon* (1980), Ind. App., 409 N.E.2d 1100, 1105.

If the contract definition of "occurrence" is "an accident ... neither expected nor intended from the standpoint of the insured", then, no amount of torturing the facts can evoke an "occurrence". Kopko received a soil report from Lewis K. Walter, Jr. Associates which clearly exposed the compressibility problems with the unimproved lots. Later, he sold a lot to Waggoner, a contractor, who built a home on the lot. He knew of the compressibility problems with the soil and went to considerable expense to correct the problems. When Waggoner purchased a second lot for development, Kopko reimbursed him for the expenses that he incurred to correct the compressibility problem.

Kopko expected soil problems. He had a report from Lewis K. Walter, Jr. that told him about the compressibility problem. He reimbursed Waggoner for the money he had spent to correct the compressibility problem. Kopko not only expected compressibility problems with lots that he sold, but after paying Waggoner for his added expense to correct the problem, he expected compressibility problems with future development. No other inference is reasonable.

Kopko sold the lot to Waggoner. The lot is no longer a part of the property insured. The insurance contract expressly provides:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence....

EXCLUSIONS

This insurance does not apply:

\*    \*    \*    \*    \*    \*

> (d) to property damage: ... (5) to premises alienated by the named insured arising out of such premises or any part thereof[.]

Record p. 67.

Transamerica is correct when it contends that the premises are excluded from coverage. Even the Majority admits that this exclusionary clause is not ambiguous. The exclusion is clear and the lot in litigation is clearly within the scope of the clause. *Evans v. National Life Accident Ins. Co.* (1984), Ind.App., 467 N.E.2d 1216, 1219.

Transamerica Insurance Services has no duty to defend the action against Kopko. There is no "occurrence" and the nature of the action is unquestionably excluded from

the coverage of the policy.  I would reverse the trial court.