John Robert DAVIDSON, Appellant (Defendant Below),

v.

CINCINNATI INSURANCE COMPANY, Appellee (Plaintiff Below).

No. 85A02–8912–CV–628.

Court of Appeals of Indiana, Third District.

May 13, 1991.

Daniel J. Harrigan, Bayliff, Harrigan, Cord & Maugans, P.C., Kokomo, for appellant.

Scott L. Starr, Donald J. Tribbett, Starr, Austen, & Tribbett, Logansport, for appellee.

HOFFMAN, Presiding Judge.

Defendant-appellant John Robert Davidson appeals from the trial court's grant of summary judgment in favor of plaintiff-appellee Cincinnati Insurance Company (Cincinnati).

The facts relevant to this appeal disclose that on December 4, 1985 John Davidson filed a complaint against Thomas Hardin for unauthorized removal of property such as plumbing, fixtures, and lights from a beauty shop which was being rented to Hardin by Davidson. Judgment was rendered in favor of Davidson by Judge T. Michael Smith on November 24, 1986. A motion for relief from judgment was filed by Hardin on the grounds that Judge Smith should have excused himself from the case due to campaign contributions that were made by Davidson to the judge while the case was pending. This motion was granted by Judge Brubaker on March 29, 1988 and the judgment was set aside.

On October 13, 1988, a complaint was filed by Hardin against Davidson based on Davidson's alleged improper conduct during the previous action. Hardin complained that Davidson's campaign contributions to Judge Smith, while the case was pending, improperly influenced the judge. As a result of Davidson's conduct, Hardin allegedly suffered humiliation and embarassment, missed time from his employment, was deprived of his civil and constitutional rights, and was slandered and defrauded for which Hardin requested compensation. Hardin also had separate counts for a civil rights violation, malicious prosecution, abuse of process, conspiracy, fraud, bribery and deceit, all of which arose from Davidson's conduct in making the campaign contributions to the judge.

Davidson requested that his insurance company, Cincinnati, provide a defense for him to Hardin's complaint. Cincinnati filed a complaint for declaratory judgment asking the trial court to declare that it was not required under the insurance policies held by Davidson to provide a defense. Both parties moved for summary judgment. On August 17, 1989, the trial court granted summary judgment in favor of Cincinnati. This appeal ensued.

Three issues are dispositive of this appeal:

(1) whether Cincinnati complied with its duty to conduct an investigation into the facts of the Hardin claim before refusing to defend Davidson;

(2) whether Davidson's insurance policies with Cincinnati obligated Cincinnati to provide a defense against Hardin's complaint; and

(3) whether the insurance policies issued by Cincinnati provided illusory coverage.

■ Before proceeding with the substantive issues of this appeal, the parties debate under what circumstances an insurance company has a duty to defend an insured. This Court in *Cincinnati Ins. Co. v. Mallon* (1980), Ind.App., 409 N.E.2d 1100, explained that an insurance company has a contractual duty to defend unfounded, false or fraudulent suits based upon risks it has insured. The insurance company's "duty to defend is still broader than its coverage liability." *Id.* at 1105.

> "But when the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend. *See* 7C Appleman, Insurance Law and Practice, [(Burdal Ed.1979)], § 4683 at 50."
>
> *Id.*

Therefore, if the nature of the claims made against Davidson in Hardin's complaint, even if proved true, do not fall within the risks insured against by the insurance policies, Cincinnati has no obligation to defend.

■ In this case, both parties filed for summary judgment and the trial court granted summary judgment in favor of Cincinnati. The parties dispute the procedural issue of whether this was a grant of summary judgment under Ind.Trial Rule 56 or if in effect, it was a grant of judgment on the pleadings pursuant to Ind.Trial Rule 12(C). It has been said that the motion for judgment on the pleadings is clearly tied to the motion for summary judgment. 1 W. HARVEY, INDIANA PRACTICE, § 12(c), at 593 (1987). The two motions serve similar purposes. *Id.* "Thus, a judgment on the pleadings is, in reality, a summary judgment minus affidavits and other supporting documents." *Id.* Conversely, a summary judgment without the evidentiary support, such as depositions, answers to interrogatories, admissions, and affidavits, would be a judgment on the pleadings. It is this latter situation which is presented in this case. Therefore, in the absence of such evidentiary support, the motions for summary judgment were transformed into a functional motion for judgment on the pleadings. *See New Trend B. Sch. v.*

*Beauty Cult. Exam.* (1988), Ind.App., 518 N.E.2d 1101, 1103.

As with a grant of summary judgment, a grant of judgment on the pleadings is proper when there are no genuine issues of material fact. *Id.* Since no genuine issues of material fact were presented in this case, the judgment made by the trial court as a matter of law was appropriate.

■ Davidson claims that Cincinnati breached its duty to investigate the facts alleged in Hardin's complaint before denying coverage to him. Davidson is attempting to raise this issue for the first time through his appellate brief. A party may not raise an issue on appeal that was not raised in the trial court. *Koop v. Bailey* (1986), Ind.App., 502 N.E.2d 116, 118 n. 3. This is also true for summary judgment proceedings. *Id.* Davidson did not argue the issue either by affirmative defense in his answer or by argument in his brief in opposition of plaintiff's motion for summary judgment. Therefore, this issue is waived.

■ Since an insurance policy is a contract between the parties, the law of contracts applies when determining policy liabilities. *Mallon, supra.* Due to the great disparity in bargaining power between insurance companies and their insureds, any ambiguous clauses in the policy are construed in favor of the insured. *Id.* However, if the policy is clear and unambiguous, it must be given its plain meaning. *Id.* Resolutions of questions of insurance policy construction are particularly appropriate by the trial court where both parties do not assert any genuine issues of material fact and the provisions of the policies are unambiguous. *B & R Farm Services v. Farm Bureau Mut. Ins.* (1985), Ind., 483 N.E.2d 1076. In fact, construction of an insurance policy which both parties assert is unambiguous is a judicial function. *Id.* Both parties in this case asked the trial court to decide if coverage, under the unambiguous insurance policies, was to be provided by Cincinnati to Davidson for the claims made by Hardin in his complaint.

There are four insurance policies at issue in this case. Two of the policies are basic

property damage and liability coverage policies, each of which provide additional liability coverage through a broad form liability endorsement. The other two are umbrella, or excess, liability policies. One basic property and liability policy and one umbrella policy covered a policy period from August 14, 1983 through August 14, 1986. The other basic property and liability policy and umbrella policy covered the time period from August 14, 1986 through August 14, 1991. All four policies are involved in this action since some of the events complained of in Hardin's complaint took place prior to August 14, 1986, and some took place after that date.

■ A review of the basic policies reveals that Section II provides liability coverage. This insuring clause provides:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this insurance applies, caused by an occurrence...."

The following are definitions for terms in the above insuring clause:

" 'bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

\* \* \* \* \* \*

'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period...."

Clearly, there is no bodily injury or property damage involved in this case. However the two basic policies provided additional liability coverage through Broad Form Liability Endorsements. These endorsements expanded coverage for "personal injury." This definition reads:

" 'Personal Injury' means injury arising out of one or more of the following offenses committed during the policy period:

1. false arrest, detention, imprisonment, or malicious prosecution;

\* \* \* \* \* \*

3. a publication or utterance
   a. of a libel or slander or other defamatory or disparaging material...."

Some of Hardin's alleged injuries, malicious prosecution and slander, do fall under this definition. However, the endorsement continues:

"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business...."

It is this last clause, "arising out of the conduct of the named insured's business," which becomes an issue at this point. Hardin distinctly alleges in his complaint that his injuries resulted from Davidson's campaign contributions to the judge. While it is true that the original action in which Judge Smith presided did arise out of the conduct of Davidson's business, leasing business property, it is too tenuous to say that the subsequent action filed by Hardin arose out of this same conduct. Hardin certainly makes it clear in his complaint that he is suing Davidson based on Davidson's conduct in making campaign contributions to Judge Smith while the original action was pending before Judge Smith. Davidson's conduct (making campaign contributions) cannot be construed to have arisen out of the conduct of his business (leasing business space).

■ The umbrella policies, like the basic policies, are identical in their pertinent parts. The basic insuring clause reads:

"We will pay on behalf of the Insured the ultimate net loss for occurrences during the policy period in excess of the underlying insurance or for occurrences covered by this policy which are either

excluded or not covered by underlying insurance because of Personal Injury, Property Damage, Advertising Liability, or Professional Liability anywhere in the world."

Occurrence is defined as follows:

" '[O]ccurrence' means an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in personal injury, property damage or advertising liability...."

The basis of Hardin's complaint arises from Hardin's allegations that Davidson intended to cause the injuries complained of by Hardin when Davidson made the campaign contributions to the judge. The character and nature of the conduct in which Davidson allegedly engaged resulting in Hardin's damage (giving campaign contributions in return for a favorable verdict) is such that intent to cause injury must be inferred as a matter of law. This Court in *Indiana Farmers Mut. Ins. Co. v. Graham* (1989), Ind.App., 537 N.E.2d 510, citing *Home Ins. Co. v. Neilsen et al.* (1975), 165 Ind.App. 445, 332 N.E.2d 240, held that intent may be established either by showing an actual intent to injure, or *by showing the nature and character of the act to be such that intent to cause harm to the other party must be inferred as a matter of law.*

At the very least, Davidson's alleged conduct could also be construed as expected. This Court in *Graham, supra,* defined expected injury or damage to mean that the insured acted although he was consciously aware that the harm caused by his actions was practically certain to occur. Either way, Davidson's alleged conduct falls within the exclusionary clause prohibiting recovery for damages expected or intended by the insured.

■ Davidson posits that if this Court holds that Cincinnati does not need to provide a defense because the policies exclude coverage for the allegations in Hardin's complaint, then we must hold that the insurance policies provided illusory coverage or coverage that is basically valueless to

the insured since the insured will not recover benefits under any reasonably expected set of circumstances. Davidson argues that malicious prosecution and slander are intentional torts that would always be excluded under the insurance policies' exclusionary clause for expected or intended damage or injury.

The Court in *Shallenberger v. Scoggins–Tomlinson, Inc.* (1982), Ind.App., 439 N.E.2d 699, 704, defined the elements of malicious prosecution and slander:

"The essential elements of an action for malicious prosecution are: the initiation of legal proceedings by, or at the instigation of, the defendant, the absence of probable cause to do so, malice in instituting the proceedings, termination of the proceedings in the plaintiff's favor, and damages sustained by the plaintiff....

The basic elements of a defamation action [slander] are a defamatory imputation, malice, publication, and damages." [Citations omitted.]

Clearly malice is an element of both actions.

The definitions of malice require an intent to commit a wrongful act. For instance, Webster's Third New International Dictionary (1964) defines malice as the "intention or desire to harm another [usually] seriously through doing something unlawful or otherwise unjustified: willfulness in the commission of a wrong...." Similarly, Black's Law Dictionary (4th Ed.1968) states that malice is "[t]he intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent...." Black's Law Dictionary, *supra,* also specifically refers to malice in the actions of malicious prosecution and slander. For malicious prosecution, "it means that the prosecution was instituted primarily because of a purpose other than that of bringing an offender to justice." *Id.* As to privileged communications in slander, " 'malice' involves an evil intent or motive arising from spite or ill will; personal hatred or ill will; or culpable recklessness or a willful and wanton disregard

of the rights and interests of the person defamed." *Id.*

From the above definitions it can be seen that in the majority of cases, intent to commit a wrongful act is required for the actions of malicious prosecution and slander. However, Cincinnati points out that in *Board of Com'rs of Hendricks County v. King* (1985), Ind.App., 481 N.E.2d 1327, 1329, malicious prosecution did not require an act that was intentional. The Court in *King* held that malice could be inferred from a failure to make a reasonable or suitable inquiry. Similarly, there are a few cases that have allowed malicious prosecution and slander actions where the defendant has acted with reckless disregard of the rights of plaintiff.

> See: *Lee v. Southland Corp.* (1978), 219 Va. 23, 244 S.E.2d 756;
>
> *Creelman v. Svenning* (1969), 1 Wash. App. 402, 461 P.2d 557, 559;
>
> *Pauling v. Globe–Democrat Publishing Co.* (8th Cir.1966), 362 F.2d 188, 195.

These cases are without a doubt in the minority of malicious prosecution and slander cases. The majority of malicious prosecution and slander cases involve defendants who have intentionally committed a wrongful act.

Although the argument can be made that Davidson could recover when malicious prosecution or slander resulted from recklessness, the possibility of Davidson recovering under these circumstances is very remote. As said before, most cases involving malicious prosecution and slander are a result of an intentional wrongdoing. Therefore, it was reasonable for Davidson to have assumed that if he were accused of malicious prosecution or slander, he would be covered under his policy which insured for personal injury (*i.e.,* malicious prosecution and slander).

▮▮ Provisions in an insurance policy, which are unambiguous when read within the policy as a whole, but in effect, provide only illusory coverage, should be enforced to satisfy the reasonable expectations of the insured. Since Davidson could have reasonably expected Cincinnati to defend

him in the action brought by Hardin against him, in part, for malicious prosecution and slander, Cincinnati should have to provide a defense for him. The trial court erred in granting summary judgment in favor of Cincinnati and is hereby reversed.

Reversed and remanded with instructions to enter summary judgment in favor of Davidson.

RATLIFF, C.J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

The duty to defend is governed not only by the allegations of the complaint but by what the insurer might ascertain after reasonable investigation. *Transamerica Insurance Services v. Kopko* (1990) 3rd Dist., Ind.App., 559 N.E.2d 322; *Cincinnati Insurance Co. v. Mallon* (1980) 2nd Dist.Ind. App., 409 N.E.2d 1100. Underlying facts may result in a determination that there is no duty to defend. *Barmet of Indiana, Inc. v. Security Insurance Group* (1981) 1st Dist., Ind.App., 425 N.E.2d 201. Thus, where the investigation would disclose that a claim is unmistakably not within the coverage, no defense will be required. *Heshelman v. Nationwide Mutual Fire Insurance Co.* (1980) 1st Dist.Ind.App., 412 N.E.2d 301.

If an insurer has the duty to defend any aspect of a suit it seems practical and appropriate for the defense to be made against all claims. It has been held, however, that where one cause of action is within coverage, but others may not be, the insurer has the duty to defend those causes alleged which are within the coverage. *All–Star Insurance Corp. v. Steel Bar, Inc.* (1971) N.D.Ind., 324 F.Supp. 160 (duty to defend based upon allegations of complaint); 14 *Couch on Insurance*, 2d Ed. § 51.47.

In any event, notwithstanding failure to investigate or inaccurate investigation, it may be said that an insurer refuses to defend at his own risk and may be liable for the costs of the defense. *Utica Mutual Insurance Co. v. Ueding* (1977) 1st

Dist., 175 Ind.App. 60, 370 N.E.2d 373. Such liability does not necessarily extend to the cost of defending any and all allegations which may be made against an insured. The consequences for a wrongful failure to defend will extend only to those claims upon which there was a duty to defend. *Budd v. Travelers Indemnity Co.* (1987) C.A.6th, 820 F.2d 787.

As to that part of Hardin's complaint which alleges malicious prosecution without regard to the alleged bribery in the form of campaign contributions, investigation would have clearly revealed that the original lawsuit did not terminate in Hardin's favor. Such is an essential element in a malicious prosecution action. It was ascertainable and it is a fact that the case of *Davidson v. Hardin,* Memorandum Decision, Cause No. 52A02–8902–CV–44 terminated in favor of Davidson. That decision was certified and became final on June 28, 1990.

Admittedly, on October 13, 1988, at the time Hardin filed the suit which is the subject of the claimed duty to defend, that final appellate action had not taken place. Nevertheless, the action was still *in fieri* at the time. As a matter of fact, it was still pending in the trial court. The hearing on Hardin's summary judgment motion did not even take place until October 14, 1988 and the judgment was not entered in Hardin's favor until November 18, 1988. Thereafter, Davidson's Motion to Correct Errors was overruled and the praecipe filed on January 30, 1989. In short, as of the date of Hardin's complaint which is the focus of the duty to defend, the matter had not terminated at all at the trial level let alone in Hardin's favor. For this reason, insofar as Hardin's complaint alleges malicious prosecution, an essential allegation was demonstrably false. The procedural facts are established by the record and Hardin may not successfully advance a contrary position. *See Pepple v. Parkview Memorial Hospital, Inc.* (1987) 3rd Dist., Ind.App., 511 N.E.2d 467, 470 (Sullivan, J. dissenting) *aff'd on trans.* 536 N.E.2d 274; *Hudson v. Hudson* (1984) 2nd Dist.Ind. App., 484 N.E.2d 579; *Cunningham v. Hiles* (1982) 2nd Dist., Ind.App., 435 N.E.2d 49.

Perhaps it could be that Cincinnati had a technical duty to "defend" in order to bring the procedural facts to light, but at this point it is not necessary to retreat in time and require Cincinnati to file an appearance and defend Davidson as to all allegations in Hardin's complaint. It is adequate, legally as well as equitably, to remedy the situation by requiring Cincinnati to pay the cost of presenting that defense.

As to all the other allegations of the complaint, with the possible exception of the free-standing and wholly unsupported assertion that Davidson's conduct "slandered" Hardin (Record at 133), they are clearly tied to the allegations of making campaign contributions for the purpose of getting a favorable result in the litigation. Such conduct could not be reasonably construed to arise out of the conduct of Davidson's business whether we consider his business to be the practice of dentistry, the leasing of real estate, or any other possible business. Even the conduct which Hardin alleges as causing the slander is the giving of campaign contributions.

To the extent that Hardin alleges slander, the complaint is clearly specious. The assertion as noted, is necessarily premised either upon the contributions given to Smith, or Smith's judgment against Hardin, or a combination of both.

The campaign contributions, notwithstanding any arguable illicit purpose or goal, do not, without some communication defaming Hardin, constitute slander. There is no hint of any such publication. The judgment entered by Smith may have been published in the sense that it became a matter of public record, but no slander may be inferred from that fact, even though it stated that Hardin was liable in damages to Davidson. Certainly no slander by Davidson, as opposed to Smith, is inferrable.

If slander were committed each time a law suit is filed and each time a judgment is entered, every litigation defendant and every judgment debtor would become an automatic slander plaintiff.

Furthermore, any coverage arguably giving rise to a duty to defend a slander claim

under the Broad Form Liability Endorsement is restricted to "Advertising Injury" arising out of Davidson's "advertising activities". Record at 29. There is no hint that any of Hardin's alleged injuries resulted from advertising activities by Davidson. It requires unacceptably tortured reasoning to equate campaign contributions from Davidson with some advertising effort on his part. That Smith may have used campaign funds in part for advertising himself and his candidacy, is speculative. But in any event such activity could not be said to be the activity of Davidson. Quite to the contrary, it would seem that Davidson would have greatly preferred that those contributions not have become known to Hardin or to any other persons except those directly involved in the campaign itself.

I would reverse the summary judgment in Cincinnati's favor only to the extent that I would require it to pay Davidson's costs of pleading and presenting the "no favorable termination" defense to the malicious prosecution claim. See *State Security Insurance Co. v. Globe Auto Recycling Corp.* (1986) 141 Ill.App.3d 133, 95 Ill.Dec. 539, 490 N.E.2d 12; 15 Ind.L.Rev. 247 at 250. Because the other allegations are clearly not within the coverage, I would affirm the judgment in all other respects.