**INDIANA INSURANCE COMPANY,**
**Appellant–Defendant,**

v.

**The NORTH VERMILLION COMMU-**
**NITY SCHOOL CORPORATION,**
**Appellee–Plaintiff,**

**and**

**Continental Casualty Company,**
**Non–Appealing Defendant.**

**No. 83A05–9406–CV–240.**

Court of Appeals of Indiana.

May 24, 1996.

Michael E. Simmons, Hume Smith Geddes & Green, Indianapolis, for Appellant.

David R. Day, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Chief Judge.

In this interlocutory appeal, Indiana Insurance Company ("Insurer") appeals the denial of its motion for summary judgment in the action filed against Insurer and Continental Casualty Company ("Continental") by The North Vermillion Community School Corporation ("School") and the grant of summary judgment in favor of the School. Insurer presents one issue for our review, which we restate as whether the trial court erred in finding that as a matter of law Insurer was liable to the School under its policy for the costs of defending a suit against the School by a teacher whose employment was terminated by the School. We affirm.

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. *Ayers v. Indian Heights Volunteer Fire Dept., Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986). We may consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment or by the nonmoving party for purposes of opposing such motion. *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993); Ind. Trial Rule 56(C), (H). We may not reverse a summary judgment order on the grounds that there is a genuine issue of material fact unless the material facts and relevant evidence were specifically designated to the court. *Rosi,* 615 N.E.2d at 434. "The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Id.* Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in the favor of the nonmoving party. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind.1991). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App.1991).

On May 20, 1983, Earl Storms, formerly a tenured teacher for the School, filed a complaint in the United States District Court for the Southern District of Indiana for damages against the School, the members of the school board, and several administrators of the School. The complaint alleged that Storms had been fired from his teaching position in violation of his constitutional rights. Storms also asserted a number of state law tort claims. On September 28, 1989, the United States District Court en-

tered judgment against Storms and in favor of the defendants.

Prior to the events forming the basis of Storms' lawsuit, the School had purchased certain insurance policies from Insurer and Continental. Following the filing of the lawsuit, the School demanded that Insurer and Continental provide the costs of defense. Both insurance companies declined to assume such costs or to reimburse the School for attorneys' fees and costs incurred in obtaining the judgment. On June 30, 1992, the School filed its complaint against Insurer and Continental, alleging that their refusal to cover defense costs constituted a breach of the insurance contracts between the parties. The School sought reimbursement of "attorney's fees and costs related to the defense of the Storms lawsuit" in an amount exceeding $236,000.00, plus interest. On October 1, 1993, Insurer and Continental each filed a motion for summary judgment. On November 6, 1993, the School submitted its memorandum in opposition to the motions for summary judgment. Oral argument was presented on the pending motions on December 2, 1993, and on February 15, 1994, the court denied the motions for summary judgment by Insurer and Continental and entered summary judgment in favor of the School. The court held that Insurer was liable to the School for the costs of defending the Storms suit and that Continental was liable to the School for any amounts in excess of the School's coverage with Insurer.

At the heart of the issue before us is whether the insurance contract between the School and Insurer provided coverage for the costs of defending a lawsuit such as that filed by Storms. The potential for coverage is in the provisions for bodily injury liability under the basic comprehensive general liability coverage ("Policy") and the provisions for personal injury liability in the broadened liability coverage endorsement ("Endorsement") to the basic policy. Insurer argues that the first possible coverage is not applicable because bodily injury, which it does not concede occurred, must result from an accident. The actions of the School in fact and as claimed by Storms were intentional. Therefore, any damage resulting from them was not caused by accident. Insurer argues there was no obligation to defend under the personal injury coverage because Storms made no specific allegations of conduct that constituted offenses under the personal liability coverage.

School argues that Storms' complaint was for bodily injury and that the definition of incidental contracts in the Endorsement means that claims arising from Storms contract of employment are covered by the policy. School also argues that allegations of Storms' complaint bring it within the personal injury coverage of the policy.

■ The record shows that the Policy contained the following delineation of its scope:

"I. COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

Coverage A. bodily injury or

Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. . . .

Exclusions

This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract. . . ."

Supplemental Record, p. 147. The Endorsement "forms a part" of the Policy and "adds [to] or modifies" the insurance provisions relating to general liability in the policy. Supplemental Record, p. 152. The Endorsement contains the following provisions:

"1. PERSONAL INJURY LIABILITY INSURANCE

PERSONAL INJURY LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called 'personal injury') sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business.

Group A—false arrest, detention or imprisonment, or malicious prosecution

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right or privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;

\* \* \* \* \* \*

if such offense is committed during the policy period ... the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient....

\* \* \* \* \* \*

## 2. BLANKET CONTRACTUAL LIABILITY

The definition 'incidental contract' of the policy is hereby deleted and the following is substituted therefor:

Incidental contract. The term 'incidental contract' means any written contract relating to the conduct of the insured's business."

Record, p. 66.

Insurer contends that because Storms' complaint alleged *intentional* conduct on the part of the School, its duty to defend was not triggered. Insurer directs us to the following definitions of terms contained in the Policy:

" 'Bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period....

\* \* \* \* \* \*

'incidental contract' means any written (1) lease of premises, (2) easement agreement, except in connection with construction of demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, (4) sidetrack agreement, or (5) elevator maintenance agreement;

\* \* \* \* \* \*

'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

\* \* \* \* \* \*

'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period[.]"

Record, p. 61.

Thus, Insurer contends the only modification made in the Endorsement that is pertinent to this case is in the definition of "incidental contract." In order for a duty to defend to be triggered, Insurer argues a claim must result in bodily injury or property damage and must arise from an unintended and accidental occurrence.[1]

---

1. The School argued at the summary judgment hearing and in its appellee's brief that Insurer also had a duty to defend under the "blanket contractual liability" provisions in the Endorsement. Because we affirm on other grounds, we need not address this argument. We note, however, that the blanket contractual liability provision in the Endorsement explicitly substitutes a new definition for the term "incidental contract" into the Policy and adds a series of exclusions.

The term "incidental contract", however defined, is used only in exclusion (a) to the comprehensive general liability coverage for bodily injury and property damage as an exception to the exclusion of coverage for liability "assumed" by the insured in a contract. There is no assumption of liability by the School in its contract of employment with Storms and it is therefore of no significance to this case that the term "incidental

The acts of the School alleged by Storms in his lawsuit were clearly intentional in nature. The complaint alleges that the various defendants each "willfully and wantonly conspired" in their acts against Storms. Record, pp. 90–91. The Endorsement clearly creates a duty to defend lawsuits alleging certain intentional acts.

The personal injury liability insurance provides coverage for injury, called "personal injury," arising out of the "offenses" of "the publication or utterance of a libel or slander, or of other defamatory or disparaging material...." Record, p. 66. These "offenses" are clearly intentional in nature. "Personal injury" is not limited by the definitions of "bodily injury" and "occurence" which require that the injury be caused by an accident resulting in unexpected and unintended damage. "Personal injury" is limited only by the offenses from which it must result. The obligation to defend is imposed as to "any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false, or fraudulent...." Supplemental Record, p. 147.

 Therefore, while we agree that the intentional nature of the acts of the School bars coverage under Coverages A and B for bodily injury and property damage liability, we do not agree that intentionality is a bar to personal injury liability coverage under the Endorsement. There is coverage under personal injury liability if Storms' suit alleges injury arising from "the publication of a libel or slander, or of other defamatory or disparaging material...." Record, p. 66.

The pertinent allegations of the Storms complaint are that the defendants, including the School:

"9. [W]illfully and wantonly conspired to deny [Storms] of his rights to due process under the United States Constitution and to injure [Storms] by various means as more fully set forth in this Complaint.

\* \* \* \* \* \*

18. That the Defendants ... conspired to deprive [Storms] of his employment and

sought to further damage him by impugning his good reputation in the community.

\* \* \* \* \* \*

31. He was further damaged by the humiliation and the lost standing and reputation within the school system and the community of the wrongful acts of the Defendants.

32. That [Storms] suffered and continues to suffer humiliation, mental anguish and emotional distress....

33. That the Defendants ... following the decision to terminate the indefinite contract of [Storms], continued to deliberately and willfully cause him harm by harrassing [sic] him and embarrassing him and subjecting him to ridicule and humiliation by others.

\* \* \* \* \* \*

41. That [Storms] has been damaged by the willful and wanton acts of the Defendants and each of them and has suffered within his profession and within his community.

\* \* \* \* \* \*

43. That because of the wrongful termination and the derogatory evaluations, [Storms] is unable to find employment in his community or within his profession.

\* \* \* \* \* \*

48. That the allegations of incompetency, neglect of duty and other good and just cause were a subterfuge and excuse for terminating [Storms]....

\* \* \* \* \* \*

55. He was further damaged by the humiliation and the loss of standing and reputation within the school system and the community because of the wrongful acts of the Defendants.

\* \* \* \* \* \*

57. That the Defendants following their decision to terminate the indefinite contract of [Storms], continued to deliberately and willfully cause him harm by harrassing

contract" was made more inclusive by the Endorsement.

[sic] and embarrassing him and subjecting him to ridicule and humiliation of others."

Record, pp. 91–100.

The offenses listed in the personal injury liability provision include libel and slander, which are species of defamation under Indiana law. *See Rambo v. Cohen,* 587 N.E.2d 140, 145–146 (Ind.Ct.App.1992), *reh'g denied, trans. denied; see also Olsson v. Indiana University Board of Trustees,* 571 N.E.2d 585, 587 (Ind.Ct.App.1991), *trans. denied.* Two other offenses are described as the publication or utterance of "other defamatory or disparaging material." The use of the word "other" before "defamatory" suggests that something different though similar and additional to libel or slander is intended. The use of the disjunctive "or" before "disparaging" suggests that something different though similar and additional to "defamatory" is intended. Any ambiguity generated by the policy language is to be construed against the insurer and in favor of coverage for the insured. *Davidson v. Cincinnati Insurance Co.,* 572 N.E.2d 502, 505 (Ind.Ct. App.1991), *trans. denied.*

Under Indiana law, an insurance company has a contractual duty to defend unfounded, false, or fraudulent suits based upon risks it has insured. *Trisler v. Indiana Insurance Co.,* 575 N.E.2d 1021, 1023 (Ind.Ct. App.1991). In *Davidson,* we stated:

"The insurance company's 'duty to defend is still broader than its coverage liability.'

'But when the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend. . . .'

\* \* \* \* \* \*

Since an insurance policy is a contract between the parties, the law of contracts applies when determining policy liabilities. Due to the great disparity in bargaining power between insurance companies and their insureds, any ambiguous clauses in the policy are construed in favor of the insured. However, if the policy is clear and unambiguous, it must be given its plain meaning."

*Davidson,* 572 N.E.2d at 505 (citations omitted).

The offenses of publishing or uttering other defamatory or disparaging material may or may not describe actions for which a recovery could be made under Indiana law. If allegations constituting claims for such offenses would not support a recovery under law, they would be groundless. The defense to them would be that the allegations failed to state a claim upon which relief could be granted, as in a motion to dismiss under Trial Rule 12(B)(6). That would not alter the fact that the claims were for offenses insured under the policy and that the insurer would be liable to provide a defense.

Insurer argues that because Storms' complaint does not use the words "libel," "slander," "defamation," or "malicious prosecution," no duty to defend arises under the personal liability provisions of the Endorsement. We disagree. Although legal theories are set forth with regard to Storms' constitutional claims, his complaint alleges mainly facts, and these facts arguably fall within the described offenses for which coverage is provided. "Defamatory" means "defaming or tending to defame." Webster's New World Dictionary 361 (3d ed.1988). To "defame" is to "to attack or injure the reputation or honor by false and malicious statements; malign, slander, or libel." *Id.* To disparage is to "lower in esteem; discredit". *Id.* at 135.

We find that Storms' allegations fit within the broadly written confines of "other defamatory or disparaging material", if not libel or slander. Further we find that Insurer, which contractually took on "the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent," had, as a matter of law, a duty to defend the School against Storms' claims. Accordingly, we cannot say that the trial court erred when it denied Insurer's motion for summary judgment and entered summary judgment in favor of the School. For the forgoing reasons, we affirm the judgment of the trial court.

AFFIRMED.

RUCKER, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

As recognized by the Majority, Storms' lawsuit and claim is for breach of an employment contract. The duty to defend is determined solely by the nature of the complaint filed in the lawsuit. *Transamerica Ins. Services v. Kopko*, 570 N.E.2d 1283 (Ind.1991); *United Services Automobile Ass'n v. Caplin*, 656 N.E.2d 1159 (Ind.Ct.App.1995), *reh. denied, trans. pending.* The Majority readily admits that the bodily injury provision of the policy which covers *occurrences* does not even remotely apply to allegations in Storms' complaint. Their sole reliance·is upon the endorsement which is the personal injury provision of the policy and relates solely to *specified offenses.·*

I dissent for this reason:

The Majority embraces the assumption that the endorsement or personal injury provision provides broad coverage. It does not. Storms' complaint for breach of contract was not covered in the bodily injury provision of the policy because it did not describe an *occurrence.* In like manner, Storms' complaint for breach of an employment contract does not describe an *offense* as defined by the policy. The nature of the claim as alleged in the complaint is obviously not covered; therefore, there is no duty to defend.[2] *Transamerica, supra*, at 1285. *Also see Fidelity and Guaranty Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.*, 25 F.3d 484, 489 (7th Cir.1994), *reh. denied; City of Jasper, Ind. v. Employers Ins. of Wausau*, 987 F.2d 453, 456 (7th Cir.1993).

The injury covered by the personal injury provision is one:

... of the following offenses committed in the conduct of the named insured's business.

Group A—false arrest, detention or imprisonment, or malicious prosecution.

Group B—the publication or utterance of a libel or slander or or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy.

An examination of Storms' complaint immediately excludes any *offenses* under "Group A". "Group B" covers the *offense* of defamation as pointed out by the Majority, but there is absolutely no allegation in Storms' complaint alleging 1) a defamatory statement to a third party or 2) that· the statement is false—two very important allegations for a defamatory or libel cause of action.[3] This void in Storms' complaint underscores the nature of his complaint which is an action for breach of contract. If the principle of *ejusdem generis* is applied, it is obvious that a breach of contract action is not included in "Group B" coverage as well as "Group A" coverage. *See Martin v. Brunzelle*, 699 F.Supp. 167 (N.D.Ill.1988);

The personal injury provision by its own specific language limits coverage to well defined *offenses*. None of the allegations in Storms' complaint support a theory of defamation or any other *offense* specifically described in the personal injury provision. The nature of a claim is a question of law to be determined by the court. This is especially true when the court is asked to compare the factual allegations in a complaint with the limited liability language in an endorsement. *County of Columbia v. Continental Ins. Co.*

---

**2.** Near the end of the Majority Opinion, the Majority points to this language in Storms' complaint as being applicable: "In his complaint, Storms alleges that he was harmed by the defendants' allegations of 'neglect of duty and incompetency' and that the defendants continued to deliberately [sic] and willfully cause him harm by harrassing [sic] him and embarrassing him and subjecting him to ridicule and humiliation of others." Supp. Record at 12, 14. It is immediately apparent that harassment, embarrassment, and humiliation are not offenses covered by the

personal injury provision. *American and Foreign Insurance Company v. Church Schools in the Diocese of Virginia*, 645 F.Supp 628 (E.D.Va. 1986).

**3.** To maintain an action for defamation, a plaintiff must show a communication with four elements: (1) defamatory imputation; (2) malice; (3) publication; and (4) damages. *Schrader v. Eli Lilly and Co.*, 639 N.E.2d 258, 261 (Ind. 1994), *reh. denied.*

*et al,* 189 A.D.2d 391, 595 N.Y.S.2d 988 (1993), *appeal denied. Also see Interco Inc. v. Mission Ins. Co.,* 808 F.2d 682, 684–685 (8th Cir.1987).

Without any allegations in Storms' complaint that would indicate a theory of coverage under the personal injury provision, there is no duty to defend. Therefore, I would reverse the trial court's grant of summary judgment.