In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1945

MARTINSVILLE CORRAL, INC., doing
business as MARTINSVILLE TEXAS
CORRAL, *et al.*,

*Plaintiffs-Appellants*,

*v.*

SOCIETY INSURANCE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-02487-TWP-MPB — **Tanya Walton Pratt**, *Judge.*

ARGUED NOVEMBER 5, 2018 — DECIDED DECEMBER 13, 2018

Before BAUER, ROVNER, and ST. EVE, *Circuit Judges*.

BAUER, *Circuit Judge.* Martinsville Corral, Inc. d/b/a
Martinsville Texas Corral, Victor A. Spina, and William Spina
(collectively, "MCI"), held a business owners insurance policy
with an "Employment-Related Practices Liability Endorse-

ment" ("Endorsement") from Society Insurance ("Society"). When DirecTV sued MCI for publicly displaying its programming in MCI's two restaurants without paying the commercial subscription rate, Society denied MCI's claim. MCI sued Society for coverage, and the district court granted summary judgment for Society. MCI appeals the summary judgment order, limiting its appeal to the denial of coverage under the Endorsement only. For the following reasons, we affirm.

## I. BACKGROUND

Martinsville Corral, Inc. owns two Texas Corral restaurants in Indiana. Victor A. Spina and William Spina are both Indiana residents, and each own 50% of Martinsville Corral. Society is an insurance company with its principal place of business in Wisconsin. With the parties diverse and the amount in controversy exceeding $75,000, the district court exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

On December 6, 2013, Society issued an insurance policy to MCI that provided general business liability coverage. MCI also purchased additional coverage under an "Employment-Related Practices Liability Endorsement." The Endorsement requires Society to cover MCI for "damages resulting from a 'wrongful act' to which [the Policy] applies." The Endorsement defines "wrongful act" to include, in relevant part, "[l]ibel, slander, invasion of privacy, defamation or humiliation."

On January 26, 2015, DirecTV, LLC filed two lawsuits against MCI pursuant to the Cable Communications Policy Act of 1984, 47 U.S.C. § 521, *et seq*. The complaints alleged that MCI displayed DirecTV's satellite television programming in

its restaurants, but paid only for a residential subscription and not the higher commercial subscription rate. DirecTV claimed it was damaged by MCI's actions because "(a) DIRECTV has been denied subscription fees for commercial use of its Satellite Programming; (b) DIRECTV's sales revenues have been reduced through Defendants' unfair competition; (c) DIRECTV's propriety rights in the Satellite Programming have been impaired." DirecTV further asserted that its "goodwill and reputation have been usurped" as a result of MCI's violations of the CCPA, while MCI gained unjust profits and goodwill by displaying DirecTV's programming without paying the commercial rate.

Taking the position that DirecTV's claims for impairment of its goodwill and reputation constituted the "wrongful acts" of libel, slander or defamation under the Endorsement, MCI requested Society to defend the suit and provide indemnification. Society denied coverage and refused to indemnify MCI. DirecTV ultimately dismissed its suit, but not before MCI incurred over $75,000 in expenses defending against it.

MCI filed a complaint against Society for breach of contract. Society counter-claimed seeking a declaratory judgment that there was no coverage. MCI and Society filed cross-motions for summary judgment. The district court granted summary judgment to Society. MCI's appeal is limited to whether Society properly denied coverage under the Endorsement for what MCI asserts is a defamation claim.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*, drawing all reasonable inferences in favor of the party opposing the motion. *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 491–92 (7th Cir. 2002). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

Society asks this court to apply the doctrine of issue preclusion against MCI based on Indiana state court judgments entered against William Spina and Victor Spina in lawsuits against their respective homeowner insurance providers. William and Victor Spina each sought coverage on the same basis that coverage is sought here—that DirecTV was seeking damages for libel, slander, or defamation. In general, "issue preclusion bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit." *Miller Brewing Co. v. Ind. Dep't of State Revenue*, 903 N.E.2d 64, 68 (Ind. 2009). Both Spina appellants sought coverage by their homeowner insurance providers and sued their homeowner

insurance providers when coverage was denied. A final order in favor of the insurance providers was entered in each case. However, issue preclusion is an affirmative defense that must be raised in a responsive pleading and Society failed to raise it in the district court. See Fed. R. Civ. P. 8(c)(1). "We will not affirm a judgment based on an affirmative defense raised for the first time on appeal." *McDonald v. Adamson*, 840 F.3d 343, 347 (7th Cir. 2016). Ergo, Society's issue preclusion argument must fail.

Turning to the district court's opinion, an insurance policy is subject to the same rules of interpretation as other contracts. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). If a policy's language is clear and unambiguous, it must be given its plain and ordinary meaning. *Tate v. Secura Ins.*, 587 N.E. 2d 665, 668 (Ind. 1992). Additionally, an insurer must defend a claim if the alleged facts "arguably fall within the described offenses for which coverage is provided." *Ind. Ins. Co. v. N. Vermillion Cmty. Sch. Corp.*, 665 N.E.2d 630, 635 (Ind. Ct. App. 1996).

MCI argues that Society is required to cover its costs and expenses for the DirecTV action because DirecTV claimed damages that fall within the scope of the Endorsement's coverage for libel, slander or defamation claims. To maintain an action for defamation under Indiana law, a "plaintiff must demonstrate (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley v. Tanoos*, 865 N.E.2d 593, 596–97 (Ind. 2007). Furthermore, "[a]ny statement actionable for defamation must not only be defamatory in nature, but false." *Trail v. Boys and Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006).

The opinion in *Vermillion*, relied upon heavily by MCI, is instructive. There, Earl Storms sued the school which employed him for terminating him in violation of his constitutional rights, and for several state law tort claims. *Vermillion*, 665 N.E.2d 630, 631–32. The school's insurance policy included, in relevant part, coverage for lawsuits based on "the publication or utterance of a libel or slander or of other defamatory or disparaging material." *Id*. At 633. While Storms did not use the terms libel, slander or defamation in his complaint, he did state that the school "conspired to deprive [Storms] of his employment and sought to further damage him by impugning his good reputation in the community" and that the school "continued to deliberately and willfully cause him harm by harrassing [sic] him and embarrassing him and subjecting him to ridicule and humiliation by others." *Id*. at 634. The Court concluded that Storms' allegations "fit within the broadly written confines of 'other defamatory or disparaging material', if not libel or slander." *Id*. at 635.

Unlike in *Vermillion*, there is no reasonable interpretation of the DirecTV complaint where it could arguably fall within the category of libel, slander or defamation. DirecTV's complaint alleged that MCI damaged DirecTV's goodwill by showing its programming without paying the correct subscription fee. In DirecTV's complaints, there are no allegations that MCI made any false, defamatory statement about DirecTV. DirecTV's actions did not include allegations that MCI made any kind of statement at all.

## III.  CONCLUSION

The district court correctly determined that the Endorsement did not provide coverage for the DirecTV action. The district court's order granting summary judgment to Society is AFFIRMED.