In the Matter of ALICE SCOLAMIERO, Respondent, v NANCY CINCOTTA, Individually and Doing Business as STATUS QUO, Appellant.

Third Department, May 28, 1987

## APPEARANCES OF COUNSEL

*Richard J. Eady* for appellant.

*Myron J. Cohn (Carl Holsberger* of counsel), for respondent.

## OPINION OF THE COURT

CASEY, J.

Respondent (tenant) leased two stores located at 1601 Union Street in the City of Schenectady from petitioner (landlord) for a two-year period at a rental rate of $500 per month, payments to commence on November 1, 1983. The lease contained an option permitting tenant to renew for an additional three-year period at $775 per month. A supplemental agreement incorporated into the lease gave tenant the right to use the rear of the leased premises for parking for herself, her employees and customers, together with the space behind adjacent premises located at 1597 and 1599 Union Street. The agreement also provided that customers of the businesses at those locations could use these spaces for parking. Tenant paid monthly rent from November 1983 to May 1984. In late April 1984, tenant became aware that employees of Realty USA, which had then leased the premises at 1597 Union Street, were using the parking lot. Apparently, the landlord had also leased the space behind 1597 Union Street to Realty USA for unrestricted parking, subsequent to and in contravention of the supplemental agreement with tenant. When efforts to resolve the dispute failed, tenant unilaterally reduced her monthly rental payments to $400 per month and this amount was accepted by the landlord for the remaining term of the lease. Despite these difficulties tenant exercised her option to renew for the three-year period at the end of the original lease. During the first three months of the option period tenant tendered monthly rental in the amount of $620. This figure represented a 20% reduction of the renewal rent which was the same proportion of rent reduction as under the original lease. Rent checks in that amount for each of the first three months were returned by landlord, and tenant tendered no further rental payments.

Landlord sent a notice of default in rent for the first month to tenant and subsequently brought the instant proceeding to recover the premises based on tenant's nonpayment of the rent required for the first three months of the renewal period.

In answer, tenant pleaded six affirmative defenses and three counterclaims. The counterclaims sought return of all rent moneys paid by tenant since May 1984, as well as damages for fraud, loss of value of the lease and loss of sales.

County Court concluded from the evidence that tenant had been evicted from the parking lot. The judgment entered indicates that a partial actual eviction was determined to have occurred. We disagree. In order to constitute a partial actual eviction, a landlord must wrongfully oust a tenant from physical possession of the leased premises. There must be a physical expulsion or exclusion and where the tenant is so ousted from a portion of the demised premises the eviction is actual, if only partial *(Barash v Pennsylvania Term. Real Estate Corp.,* 26 NY2d 77, 82-83). Here, there has been no such showing. It has not even been shown that tenant's right to the parking space was an exclusive one. But, even assuming this fact to be true, landlord did not physically exclude or expel tenant from the parking space; lacking such showing, there can be no finding of a partial actual eviction *(Union Dime Sav. Bank v Frohlich,* 57 AD2d 862). The most that tenant can claim here, therefore, is a constructive eviction caused by landlord's wrongful acts which substantially and materially deprived tenant of the beneficial use and enjoyment of the premises *(Barash v Pennsylvania Term. Real Estate Corp., supra).*

However, in order to claim constructive eviction tenant must vacate the premises *Union Dime Sav. Bank v Frohlich, supra; Meerbaum v Crepes D'Asie,* 85 Misc 2d 345), which, of course, tenant did not do. On the contrary, tenant, with full knowledge of the situation, exercised her option to renew and remained in the premises. Having done so, she has waived any claim of constructive eviction. Therefore, the most that tenant suffered is a diminution in the extent to which she could enjoy the use of the parking area *(see, Barash v Pennsylvania Term. Real Estate Corp., supra,* at 84). As noted by County Court, proof of actual damages in this respect is woefully inadequate and insufficient on which to base a damage award. County Court set the value of tenant's loss at $100 per month, a figure determined by the acts of the parties themselves under the original lease, and dismissed all affirmative defenses and counterclaims. With no showing that the parking situation

has changed under the renewal lease, the judgment of County Court should be affirmed. We note that landlord has not cross-appealed.

MAHONEY, P. J., KANE, WEISS and HARVEY, JJ., concur.

Judgment affirmed, with costs.