COUNTY OF COLUMBIA, Appellant, v CONTINENTAL INSURANCE COMPANY et al., Respondents.

Third Department, April 8, 1993

### APPEARANCES OF COUNSEL

*Whiteman, Osterman & Hanna,* Albany *(Jean F. Gerbini, John Hanna, Jr.,* and *Charlene D. Fleszar* of counsel), for appellant.

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski,* Albany *(Dianne Bresee Mayberger* of counsel), for Continental Insurance Company, respondent.

*Ainsworth, Sullivan, Tracy, Knauf, Warner & Ruslander,* Albany *(Frank M. Pell* of counsel), for Aetna Casualty & Surety Company, respondent.

### OPINION OF THE COURT

MERCURE, J.

From June 1, 1980 through June 1, 1986, defendant Aetna Casualty & Surety Company insured plaintiff under comprehensive general liability policies providing coverage for bodily injury, property damage and personal injury. Similar coverage was provided by defendant Firemen's Insurance Company of Newark, N.J. during the period June 1, 1986 through June 1, 1987 and by defendant Continental Insurance Company from June 1, 1986 through June 1, 1990. During the time periods relevant to this action, all of defendants' policies excluded from the bodily injury and property damage liability coverage damage "arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water".

In January 1989, H.K.S. Hunt Club, Inc. (hereinafter HKS) commenced an action against plaintiff seeking injunctive relief and damages for the impairment of its land by leachate contamination from an adjoining parcel utilized by plaintiff as a refuse and solid waste disposal site. The complaint pleaded causes of action (1) alleging that plaintiff's conduct constituted a continuing nuisance, (2) alleging that plaintiff's conduct

constituted a continuing trespass, and (3) for treble damages pursuant to RPAPL 853 upon the ground that plaintiff's use of the property "put [HKS] out of its own property in an unlawful manner and continues to hold and keep [HKS] out of its property by unlawful means". Plaintiff thereafter requested that defendants defend and indemnify it in the underlying HKS action and, in October 1989, commenced this declaratory judgment action seeking, *inter alia,* a declaration of its rights and defendants' obligations under the subject policies.

Following service of an answer to plaintiff's amended complaint, Aetna moved and Firemen's and Continental crossmoved for summary judgment dismissing the complaint upon the ground that the pollution exclusion clause contained in defendants' policies exempted them from defending plaintiff in the underlying action. Plaintiff cross-moved for partial summary judgment on the duty to defend, arguing that the property damage and personal injury coverage afforded by defendants' respective policies mandated that they provide plaintiff with a defense. Supreme Court granted defendants' motions and denied plaintiff's cross motion, finding that the pollution exclusion clauses contained in the policies issued by defendants exempted them from defending plaintiff in the action brought by HKS and, further, that the complaint in the underlying action did not allege offenses encompassed by the personal injury portion of the relevant policies. This appeal by plaintiff ensued.

We affirm. Although the allegations of HKS' complaint against plaintiff fall squarely within the pollution exclusion of defendants' respective policies, thereby precluding coverage against liability for bodily injury and property damage, plaintiff contends that coverage nonetheless exists under the policies' personal injury and advertising injury liability endorsement. We disagree. Insofar as is relevant to this appeal, that coverage binds the respective defendants to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury * * * sustained by any person or organization and arising out of the conduct of the named insured's business".* "Personal injury", in turn, is defined as an "injury arising out of one or more of the following offenses committed during the policy period: (1)

---

* The policy issued by Continental for the period June 1, 1988 through June 1, 1989 contains a more restrictive definition of personal injury ("[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies").

false arrest, detention, imprisonment, or malicious prosecution; (2) wrongful entry or eviction or other invasion of the right of private occupancy; (3) a publication or utterance [constituting] defamation or invasion of an individual's right of privacy]". The dispute here centers on the construction given the clause "wrongful entry or eviction or other invasion of the right of private occupancy".

It is well settled that "[t]he duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be" *(Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 310; *see, Servidone Constr. Corp. v Security Ins. Co.,* 64 NY2d 419, 424-425; *Town of Moreau v Orkin Exterminating Co.,* 165 AD2d 415, 418). Thus, "[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend" *(Technicon Elecs. Corp. v American Home Assur. Co.,* 74 NY2d 66, 73). That is not to say, however, that we are required to accept HKS' legal characterization of the causes of action alleged in the complaint. To the contrary, as arbiters of the law, it is our privilege to determine the nature of the claim alleged in the complaint, based upon the facts alleged and not the conclusions which the pleader draws therefrom *(see, Allstate Ins. Co. v Mugavero,* 79 NY2d 153, 162-163).

Here, the essential factual allegations of the complaint are that "leachate contamination [from plaintiff's landfill] * * * has * * * polluted and contaminated the soil, air, ground and surface waters (including protected wetlands) on, under and over [HKS'] property, and such pollution and contamination will continue unless restrained and abated; and * * * [plaintiff] ha[s] deposited, and [is] continuing to deposit, refuse and other solid waste on and near [HKS'] property". The only monetary relief sought is "compensatory damages for the permanent injury to and reduction in value of [HKS'] property * * * and trebling such damages pursuant to [RPAPL 853]". Notably, we need give no consideration to the fact that, after stating the essential underlying factual allegations, the complaint is divided into separate causes of action claiming in conclusory fashion that plaintiff's use of its landfill constitutes "a continuing nuisance" and "a continuing trespass" and that HKS is entitled to treble damages pursuant to RPAPL 853 *(see, Allstate Ins. Co. v Mugavero, supra).* As such, the issue is not whether a nuisance or trespass claim may possibly fit

within the policies' personal injury coverage but whether the *facts* alleged in HKS' complaint do.

In our view, an action for environmental damage to real property such as the one pleaded in HKS' complaint could not possibly constitute a "wrongful entry or eviction or other invasion of the right of private occupancy" so as to come within the personal injury liability coverage of defendants' policies. Unlike a general insurance policy, where coverage is stated in very broad terms and subject to clearly defined exceptions (as is the case in the bodily injury and property damage coverage of defendants' policies), the personal injury coverage is "buil[t] from the ground up [and] affords coverage only for defined risks" *(Martin v Brunzelle,* 699 F Supp 167, 171). As such, coverage is limited to "claims * * * actually arising out of the enumerated * * * torts" *(Aetna Cas. & Sur. Co. v First Sec. Bank,* 662 F Supp 1126, 1132; *see, American & Foreign Ins. Co. v Church Schools,* 645 F Supp 628, 634). By application of the principle of *ejusdem generis (see generally, Lawrence v Town of E. Fishkill,* 167 AD2d 447, 448, *lv denied* 78 NY2d 857; McKinney's Cons Laws of NY, Book 1, Statutes § 239), the key to interpreting the phrase "other invasion of the right of private occupancy" lies in the definition of "wrongful entry" and "eviction", both of which involve actual interference with possessory rights to real property. Based upon the foregoing, we conclude that the coverage under the personal injury liability endorsement is limited to liability for purposeful acts aimed at dispossession of real property by someone asserting an interest therein, an element not pleaded in HKS' complaint *(see,* Foggan, Lawrence and Renberg, *Looking for Coverage in All the Wrong Places: Personal Injury Coverage in Environmental Actions,* 3 Envtl Claims J 291, 296 [spring 1991]).

Further, construing the personal injury and advertising injury liability coverage of defendants' respective policies in the context of the entire policy *(see, Meyers & Sons Corp. v Zurich Am. Ins. Group,* 74 NY2d 298, 302-303), the facts alleged in the underlying complaint do not "raise a reasonable possibility that [plaintiff] may be held liable for some act or omission covered by the [personal injury liability coverage]" *(supra,* at 302). Of greatest significance here is the fact that defendants' policies provide comprehensive general liability coverage for property damage which, were it not for its specific pollution exclusion, would clearly cover HKS' claim. Under the circumstances, to extend the personal injury cover-

age to occurrences which fall squarely within the property damage coverage would have the effect of rendering the pollution exclusion meaningless *(see, Gregory v Tennessee Gas Pipeline Co.,* 948 F2d 203, 209 [5th Cir]).

In view of our determination that the personal injury liability coverage of defendants' respective policies does not entitle plaintiff to a defense, we need not consider the parties' remaining contentions.

CREW III, J. (dissenting). The threshold issue on this appeal is whether the personal injury coverage provided by the policies issued by defendants, Aetna Casualty & Surety Company, Continental Insurance Company and Firemen's Insurance Company of Newark, N.J. encompasses the claims made by H.K.S. Hunt Club, Inc. (hereinafter HKS) in the underlying action. The majority has concluded that the complaint at issue here does nothing more than plead a cause of action for environmental property damage. We are of the view, however, that the complaint sets forth sufficient facts to bring the claim of trespass within the scope of the personal injury coverage provided under the subject policies. Accordingly, we respectfully dissent.

We begin with the basic proposition that "an insurer's duty to defend is exceedingly broad" *(Colon v Aetna Life & Cas. Ins. Co.,* 66 NY2d 6, 8; *see, Continental Cas. Co. v Rapid-Am. Corp.,* 80 NY2d 640, 648) and "rests solely on whether the complaint alleges *any* facts or grounds which bring the action within the protection purchased" *(Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 310 [emphasis supplied]; *see, Technicon Elecs. Corp. v American Home Assur. Co.,* 74 NY2d 66, 73). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be" *(Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663, 670).

Here, defendants agreed, under the personal injury coverage provided, to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury * * * sustained by any person or organization and arising out of the conduct of the named insured's business".[1] "Personal injury" is defined as an "injury

---

1. The quoted language, and the definition of personal injury that follows, is taken from Firemen's policy covering the period June 1, 1986 through June 1, 1987. Each of the relevant Aetna policies contain substan-

arising out of one or more of the following offenses committed during the policy period: (1) false arrest, detention, imprisonment, or malicious prosecution; (2) wrongful entry or eviction or other invasion of the right of private occupancy; (3) a publication or utterance [constituting defamation or invasion of an individual's right of privacy]". Although we agree that the key to interpreting the phrase "other invasion of the right of private occupancy" lies in the definition of "wrongful entry" and "eviction",[2] we cannot subscribe to the narrow construction given those terms by the majority. Eviction plainly requires "a wrongful act by [a] landlord which deprives [a] tenant of the beneficial enjoyment or actual possession of the demised premises" *(Barash v Pennsylvania Term. Real Estate Corp.,* 26 NY2d 77, 82; *see, Matter of Scolamiero v Cincotta,* 128 AD2d 224, 226, *lv denied* 70 NY2d 607). Wrongful entry, on the other hand, is akin to trespass *(see,* 104 NY Jur 2d, Trespass, § 10, at 454-455 ["actionable trespass must necessarily involve a wrongful or unjustifiable entry upon the lands of another, or the performance of some improper, careless, wrongful, or unnecessary act thereon"]). Although trespass does involve a physical entry upon or invasion of land *(see,* Prosser and Keeton, Torts § 13, at 69-71 [5th ed]; 85 NY Jur 2d, Premises Liability, § 222, at 458) and requires interference with possession and, therefore, with the use of another's property *(see,* Prosser and Keeton, Torts § 13, at 70 [5th ed]; Restatement [Second] of Torts § 158, comment *i;* § 165), it does not require ouster.

With these principles in mind, we must now determine whether the causes of action alleged in the underlying complaint fall within the personal injury provisions at issue. Although other jurisdictions have addressed the scope of such

---

tially similar language, as does the policy issued by Continental for the period June 1, 1987 to June 1, 1988. The policy issued by Continental for the period June 1, 1988 to June 1, 1989, however, contains a more restrictive definition of personal injury ("[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies"). Although not included in the record, Continental asserts that its policy covering the period June 1, 1989 to June 1, 1990 contains the same definition of personal injury and that its policy covering the period June 1, 1986 to June 1, 1987 did not contain personal injury coverage at all.

2. Neither term is defined in any of the relevant policies, and resort to the principle of *ejusdem generis,* which provides that "where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated" (Black's Law Dictionary 464 [5th ed 1979]), therefore seems appropriate.

personal injury coverage *(see, e.g., Red Ball Leasing v Hartford Acc. & Indem. Co.,* 915 F2d 306; *Titan Holdings Syndicate v City of Keene,* 898 F2d 265; *Morton Thiokol v General Acc. Ins. Co.,* Super Ct, NJ, Aug. 27, 1987, O'Brien, J.), this is apparently a case of first impression in this State. Here, the majority has concluded that no matter what label is attached to the underlying causes of action, HKS is in reality seeking compensation for environmental property damage. We agree with the majority that to the extent that HKS alleges permanent and irreparable injury to its property and seeks damages for the permanent reduction in value thereof, such claims would be covered, if at all, by the property damage portions of the subject policies and not by the personal injury coverage. HKS, however, has also alleged that plaintiff's actions constitute a continuing trespass. This, we think, is an "invasion of the right of private occupancy" in that it is an interference with HKS' private use of its property. Contrary to the majority's conclusion, we are of the view that the complaint contains sufficient factual allegations to support this cause of action. Because defendants must provide a defense if *any* of the claims asserted potentially fall within the coverage provided *(see, Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 310-311, *supra),* HKS' claim of continuing trespass potentially falls within the scope and definition of the "wrongful entry" or "other invasion of the right of private occupancy" offenses contained in the personal injury portions of the subject policies *(see, e.g., Pipefitters Welfare Educ. Fund v Westchester Fire Ins. Co.,* 976 F2d 1037; *Napco, Inc. v Fireman's Fund Ins. Co.,* US Dist Ct, WD Pa, May 22, 1991, Benson, J.; *High Voltage Eng'g Corp. v Liberty Mut. Ins. Co.,* Super Ct, Mass, Jan. 24, 1992, Stearns, J.).[3]

Our conclusion that the allegations contained in the underlying complaint potentially fall within the personal injury coverage provided does not end our inquiry, however. Clearly, defendants have no obligation to defend if it is demonstrated that the claims alleged fall within an exclusionary provision of the policies *(see generally, Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 310-312, *supra; Rajchandra Corp. v Title Guar. Corp.,* 163 AD2d 765, 768). The policies issued by Aetna covering the periods June 1, 1980 through June 1, 1985 each contain the following pollution exclusion: "[t]his insurance

---

3. Personal injury coverage would not be available under certain Continental policies to the extent set forth in note 1, *supra.*

does not apply * * * to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental".[4] While this language, in our view, would exclude coverage under the property damage portion of the policies, the exclusion, by its very terms, applies *only* to bodily injury or property damage. No similar exclusion appears in the personal injury portion of the policy, nor may any such exclusion be implied as an insurer wishing to exclude certain coverage from its policy must do so in "clear and unmistakable language" *(Rajchandra Corp. v Title Guar. Co., supra,* at 768).

With respect to the policy issued by Firemen's covering the period June 1, 1986 to June 1, 1987, we note that although the pollution exclusion contained therein expressly modifies, *inter alia,* the comprehensive general liability portion of the policy, which sets forth the personal injury coverage provided, the text of the exclusion itself refers solely "to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants". Again, the exclusion, by its very terms, does not modify the personal injury coverage provided under the policy. The Continental policy covering the period June 1, 1987 to June 1, 1988 suffers the same infirmity, as the relevant pollution exclusion clause contained therein applies only to bodily injury or property damage.[5]

As an alternative basis for denying coverage, defendants argue that the "admissions" contained in a consent order signed by plaintiff in May 1986 trigger the "willful violation" exclusion contained in the relevant policies. It appears that plaintiff was accused by the Department of Environmental

---

4. The property damage portion of the policy issued by Aetna for the period June 1, 1983 to June 1, 1984 does not appear to be included in the record, but it is presumed that the relevant exclusion utilized the same language employed in the other cited policies. Aetna's policy for the period June 1, 1985 to June 1, 1986 contains a pollution exclusion that is not at issue on appeal.

5. As personal injury coverage is not available under the policies issued by Continental referenced in note 1, *supra,* we need not address the pollution exclusions contained in those policies.

Conservation of violating certain of its rules and regulations promulgated pursuant to ECL 27-0703 regarding the operation of the refuse and solid waste disposal site at issue in the underlying action. In that regard, plaintiff waived its right to a hearing and consented to the issuance of an order wherein it was provided, *inter alia,* that plaintiff was "discharging leachate into the groundwater * * * in violation of Sections 360.8 (a) (3) and 703.5 of 6 NYCRR".

Although the parties debate at length whether the regulations violated are penal in nature and whether the term "willful" is ambiguous, we need not reach these issues. The consent order specifically provided that "[t]he findings, provisions, terms and conditions of this [o]rder *shall not* create by reason thereof any presumption of law or finding of fact which shall inure to or be for the benefit of any person other than the State of New York, and *shall not* be deemed to be admissions of any kind on the part of [plaintiff] in any action or proceeding by or in *[sic]* behalf of any person other than the State of New York" (emphasis supplied). In our view, the consent order is in the nature of a settlement or compromise and, therefore, cannot be used by defendants to bind plaintiff in this action *(cf., Kollmer v Slater Elec.,* 122 AD2d 117, 120). Moreover, we note that contrary to defendants' assertion, although the consent order does recite violations of certain regulatory provisions, it does not contain any *express* admission of fact, fault or liability *(see, Bigelow-Sanford, Inc. v Specialized Commercial Floors,* 77 AD2d 464, 466; *see also, Kurth v Lawlor,* 183 AD2d 1060, 1061, n). Defendants' remaining contentions are, in our view, lacking in merit.

In sum, we are of the view that the underlying complaint does allege facts which potentially bring the claims asserted within the scope of the personal injury protection afforded by the subject policies and would therefore conclude that defendants have a duty to defend *(see generally, Technicon Elecs. Corp. v American Home Assur. Co.,* 74 NY2d 66, 73, *supra; Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 310, *supra).* Accordingly, we would reverse Supreme Court's order and amended order granting defendants' motions for summary judgment, deny said motions and grant plaintiff's cross motion.

CASEY and HARVEY, JJ., concur with MERCURE, J.; CREW III, J., and WEISS, P. J., dissent in a separate opinion by CREW III, J.

Ordered that the order and amended order are affirmed, with one bill of costs.