PUBLISH

UNITED STATES COURT OF APPEALS
**Filed 9/26/96**TENTH CIRCUIT

LIBERTY MUTUAL INSURANCE CO.,

    Plaintiff-Appellee.

v.

EAST CENTRAL OKLAHOMA
ELECTRIC COOPERATIVE,

    Defendant-Appellant,

No. 95-5185

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 93-C-1007-K)

Richard D. Wagner and I. Michele Drummond, Wagner, Stuart & Cannon, Tulsa, Oklahoma, for Defendant-Appellant.

Galen L. Brittingham and Marthanda J. Beckworth, Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, Oklahoma, for Plaintiff-Appellee.

Before EBEL, KELLY, and HENRY, Circuit Judges.

HENRY, Circuit Judge.

    East Central Oklahoma Electric Cooperative ("East Central") obtained a judgment

for over $4,000,000 against Creek County Well Service, based on a district court's

determination that Creek County Well Service was responsible for 75 % of a wrongful death, state-court judgment that the family of one of Creek County Well Service's employees had previously obtained against East Central. Subsequently, plaintiff Liberty Mutual Insurance Co. ("Liberty") brought a diversity action against East Central, seeking a declaratory judgment that only the $500,000 Employers Liability Insurance Policy that Liberty had issued to Creek County Well Service applied to East Central's $4,000,000 judgment against Creek County Well Service.

The district court granted Liberty's motion for summary judgment on its claim. East Central then filed a motion for new trial, asking the district court to reconsider its decision that the Comprehensive General Liability ("CGL") Policy that Liberty also had issued to Creek County Well Service did not provide additional coverage for its claim. The district court denied East Central's motion, and East Central now appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

The relevant facts in the part of this matter now before us are undisputed. On February 24, 1986, three employees of Creek County Well Service were injured, one of whom died as a result of his injuries, when the oil well servicing rig which they were using came into contact with high voltage electrical lines that East Central owned and operated. As a result of this accident, two actions were brought against East Central in state district court in Oklahoma: One of the injured Creek County Well Service

2

employees brought a personal injury action, and the family of the employee who died brought a wrongful death action. In response, East Central filed in the state court actions a third-party petition against Creek County Well Service, seeking payment under Oklahoma's "Six-Foot Rule," see Okla. Stat. tit. 63, § 984, for any liability it would incur as a result of the power line accident. The Six-Foot Rule makes "[a] person, firm, corporation or association . . . [that comes] within six (6) feet of any high voltage overhead electrical line . . ., or . . . [that causes] any part of any tool, equipment, machinery or material to be brought within six (6) feet of any such overhead high voltage line," Okla. Stat. tit. 63, § 981, "liable to the owner or operator of such high voltage line . . . for all liability incurred by such owner or operator as a result of any accidental [physical or electrical] contact [with the high voltage line]," id. § 984.

Creek County Well Service filed a motion to dismiss the third-party petition which East Central had filed against it, claiming that the provision of the Oklahoma Workers Compensation Act that makes an employer's liability under the Act exclusive, Okla. Stat. tit. 85, § 12, barred East Central's effort to recover from it. Although the state court judge refused to rule on this motion until after the trial in the state actions was completed, he ordered that Creek County Well Service not be mentioned at trial. Additionally, he entered a pretrial order prohibiting Creek County Well Service from participating at trial.[1] Creek County Well Service subsequently filed Chapter 11 bankruptcy.

---

[1]Although the state judge's actions seem questionable, see infra note 5, they are not before us.

After the family of the Creek County Well Service employee who was killed by the power line incident secured a judgment for over $2,500,000, plus interest, against East Central in state court, East Central proceeded in bankruptcy court with its claims against Creek County Well Service. The parties filed a stipulation in the bankruptcy court, under which they agreed that East Central could recover from Creek County Well Service only to the extent of any insurance that Creek County Well Service held that covered East Central's claim. At the time of the accident, Creek County Well Service held insurance policies with Liberty and with Stonewall Surplus Lines Insurance Co. ("Stonewall"). Its policies with Liberty included a Workers Compensation and Employers Liability Insurance Policy, which had a liability limit of $500,000, and a Comprehensive General Liability ("CGL") Policy, which had a liability limit of $1,000,000. Creek County Well Service had an umbrella policy with Stonewall, which had a liability limit of $1,000,000.

Because Creek County Well Service had not participated in the state court trial in which its degree of fault for the power line accident had been determined, it sought and acquired a withdrawal of the certification for bankruptcy of East Central's claims against it, and a jury trial was held in the United States District Court for the Northern District of Oklahoma to determine the parties' respective percentages of fault for the injuries to the Creek County Well Service employees. The jury found that Creek County Well Service was 75 % negligent in causing the injuries to its employees. Accordingly, the district court entered a judgment holding Creek County Well Service liable to East Central for 75

4

% of the state-court judgment against East Central, amounting to over $4,000,000.

In partial satisfaction of this judgment, Liberty paid East Central $500,000 under the Employers Liability Insurance Policy it had issued to Creek County. It asserted that this was the only policy under which it was liable to East Central. East Central, however, claimed that it was also entitled to the liability limits of the CGL Policy that Creek County Well Service had with Liberty. Stonewall has paid East Central the $1,000,000 liability limit under its umbrella policy in partial satisfaction of East Central's judgment against Creek County Well Service.

As a result of the dispute between Liberty and East Central regarding coverage under the CGL Policy, Liberty filed a declaratory judgment action, seeking a determination that "the only insurance policy issued by Liberty . . . to Creek County [Well Service] . . . which covers the loss of East Central . . . is the Employers Liability Policy with limits of $500,000." Aplt's App., vol. I, Ex. A at 9. Liberty later filed a motion for summary judgment, which the district court granted. East Central then filed a motion for new trial, asking the district court to reconsider its decision that the CGL Policy did not provide coverage for its claim. The district court denied this motion, and East Central now appeals.

## II. DISCUSSION

We review de novo the district court's order granting summary judgment to Liberty, applying the same standard as did the district court. See Fed. R. Civ. P. 56(c);

5

Regional Bank v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494, 496 (10th Cir. 1994). The parties do not dispute the facts in this case, so our inquiry focuses solely on whether Liberty is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Because this is an action in diversity, we must follow Oklahoma law and interpret the CGL Policy at issue as would an Oklahoma court. Regional Bank, 35 F.3d at 496.

The CGL Policy issued by Liberty to Creek County Well Service covers, among other things, personal injuries and bodily injuries as defined by the policy. On appeal, East Central argues that the district court erred in holding that its claim falls under Part I of the CGL Policy, which defines the policy's coverage for "bodily injuries," because it is not seeking coverage under this part of the policy. Instead, it maintains that its claim is one for "personal injury" under Part II of the Broad Form Comprehensive General Liability Endorsement to the CGL Policy.

This characterization by East Central of its claim as one for "personal injury" is inconsistent with its earlier acceptance of payment for its claim under Creek County Well Service's Employers Liability Insurance Policy: East Central previously accepted from Liberty $500,000 under Creek County Well Service's Employers Liability Insurance Policy, pursuant to which Liberty agrees to "pay all sums [Creek County Well Service] legally must pay as damages because of bodily injury to [its] employees, provided the bodily injury is covered by this Employers Liability Insurance." Aplt's App., vol. II, Ex. F at 430 (emphasis added). Despite this inconsistency, Liberty makes no argument on

6

appeal that East Central's acceptance of payment under the Employers Liability Insurance Policy, based on the "bodily injuries" of Creek County Well Service's employees, estops or prevents it from now recharacterizing its claim based on the same set of underlying facts as one for "personal injury."

In any event, East Central's characterization of its claim as a personal injury under the CGL Policy is irrelevant to our determination of whether its claim is covered. Instead, we must examine the factual basis for East Central's claim and then determine whether it constitutes a type of injury defined in the policy. We begin by noting that the factual basis for East Central's claim is the injuries to and death of Creek County Well Service's employees resulting from their contact with East Central's power lines on February 24, 1986. Under Oklahoma's Six-Foot Rule, Okla. Stat. tit. 63, § 984, East Central seeks payment from Creek County Well Service for its liability to the injured Creek County Well Service employees. First, we examine whether East Central's claim under the CGL Policy is one for bodily injury. We conclude that it is; however, because we also conclude that East Central's claim is one for indemnification or contribution, it is excluded from coverage pursuant to an amendatory endorsement to Part I of the CGL Policy. We next examine whether East Central's claim is also one for personal injury. We hold that it is not, and therefore, East Central is not entitled to payment under Part II of the Broad Form Comprehensive General Liability Endorsement to the CGL Policy.

## A.  Bodily Injury

7

Part I(A) of the CGL Policy defines its coverage of bodily injuries as follows: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this policy applies, caused by an occurrence . . . ." Aplt's App., vol. II, Ex. F at 370. It defines bodily injury as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." Id. at 372. Specifically excluded from coverage are certain claims for indemnification or contribution based on bodily injuries, as expressed by an amendatory endorsement to the policy added in 1984.[2] The endorsement states, in relevant part,

> This insurance does not apply:
> (i) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured for which the insured may be held liable as an employer or in any other capacity; [or]
> (ii) to any obligation of the insured to indemnify or contribute with another because of damages arising out of the bodily injury[.]

Id. at 378 (emphasis added).

---

[2]Although the amendatory endorsement fails to state when it was added or became effective, see Aplt's App., vol. II, Ex. F at 378 (leaving the space next to the category "Effective Date" blank), East Central does not dispute Liberty's statement that it was added in 1984, see Aple's Br. at 15. Therefore, the amendatory endorsement was in effect in 1986 when the accident involving East Central's power lines and Creek County Well Service's employees occurred.

Exclusion(j) of the CGL Policy, which was replaced by the amendatory endorsement at issue, stated that the policy does not apply "to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury." Aplt's App., vol. II, Ex. F at 370.

**1. Neither the bodily injury provision nor the amendatory endorsement is ambiguous.**

To determine whether the damages that East Central paid to the Creek County Well Service employees arose out of a bodily injury as defined by the CGL Policy, and if so, whether East Central's claim against Creek County Well Service is one for indemnification or contribution for such damages and therefore is excluded from coverage, we must first determine whether the relevant policy provisions are ambiguous. See, e.g., Phillips v. Estate of Greenfield, 859 P.2d 1101, 1104 (Okla. 1993). A contract provision is ambiguous only if it can be interpreted as having two different meanings. E.g., Littlefield v. State Farm Fire & Casualty Co., 857 P.2d 65, 69 (Okla. 1993). If it is not ambiguous, it is construed in its plain and ordinary sense. E.g., Phillips, 859 P.2d at 1104. If it is ambiguous, it is construed in favor of the insured. E.g., Littlefield, 857 P.2d at 69.

The bodily injury provision of the policy and its accompanying amendatory endorsement excluding coverage for indemnification or contribution claims based on bodily injuries are not ambiguous because they are capable of only one interpretation. Cf. Pearson Servs., Inc. v. INA Ins. Co., 937 F.2d 401, 402, 403 (8th Cir. 1991) (holding as unambiguous under Iowa law the insurance policy's exclusion of coverage "to any obligation of the insured to indemnify another because of damages arising out of . . . [a bodily] injury" "to any employee of the insured arising out of and in the course of his

9

employment by the insured"); National Union Fire Ins. Co. v. Kasler Corp., 906 F.2d 196, 199 (5th Cir. 1990) (same, applying Texas law). Therefore, we interpret them according to their plain and ordinary meaning.

### 2. East Central's claim is excluded by the amendatory endorsement.

Under Part I(A) of the CGL Policy, the injuries and death of the Creek County Well Service employees constitute "bodily injuries." East Central's claim against Creek County Well Service is based on Creek County Well Service's obligation under the Six-Foot Rule to indemnify[3] East Central for over $4,000,000 for East Central's liability to Creek County Well Service's employees and their families as a result of the employees' bodily injuries. See East Central Elec. Coop. v. Robert Gordon Equip., Inc., 772 F.2d 662, 663-64 (10th Cir. 1985) (holding that under Okla. Stat. tit. 63, § 984, the power line company can recover from the employer of an employee injured by the power line the

---

[3]We construe Creek County Well Service's liability under the federal district court judgment to pay East Central over $4,000,000 pursuant to the Six-Foot Rule as an obligation to indemnify, rather than contribute to, East Central. Our construction is based on the fact that the state-court, wrongful death judgment was against only East Central, who had sued Creek County Well Service in the same action for payment under the Six-Foot Rule for any liability it would incur as a result of the power line incident, rather than against both East Central and Creek County Well Service. See Okla. Stat. tit. 12, § 832(A) & (F) (explaining the difference between actions between tortfeasors for contribution and for indemnification); see also East Central Elec. Coop. v. Robert Gordon Equip., Inc., 772 F.2d 662, 663 (10th Cir. 1985)(describing an action under the Six-Foot Rule as one for indemnification). However, even if we are incorrect, and the action provided to East Central by the Six-Foot Rule is one for contribution instead of indemnification, it does not change the result in this case because the amendatory endorsement here excludes coverage of "any obligation of the insured to indemnify or contribute with another because of damages arising out of the bodily injury," Aplt's App., vol. II, Ex. F at 378 (emphasis added).

10

percentage of the employer's negligence as determined by a jury). Thus, the amendatory endorsement excluding coverage for indemnification claims against the insured arising out of bodily injuries excludes coverage for East Central's claim against Creek County Well Service. Cf. Pearson Servs., Inc., 937 F.2d at 403-04 (holding that the policy's exclusion of coverage for "any obligation of the insured to indemnify another because of damages arising out of such [bodily] injury" "operates where 'the genesis of the action is an employee's work-related bodily injury.'" (quoting National Union Fire Ins. Co., 906 F.2d at 200)).

If we were instead to accept East Central's argument that its claim against Creek County Well Service, which arises from injuries fitting the definition of "bodily injury" under the policy, was covered under the personal injury provision of the policy, it would render the amendatory endorsement to the bodily injury provision which excludes coverage of this claim meaningless. See County of Columbia v. Continental Ins. Co., 595 N.Y.S.2d 988, 991 (N.Y. App. Div. 1993) ("[T]o extend the personal injury coverage to occurrences which fall squarely within the property damage coverage would have the effect of rendering the pollution exclusion meaningless."), aff'd, 634 N.E.2d 946 (N.Y. 1994). Such a strained reading of the CGL Policy would contradict the rule of interpretation that under Oklahoma law an insurance policy is to be construed so as to give effect to all of its provisions if possible. See Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991); United States Fidelity & Guar. Co. v. Walker, 329 P.2d 852, 856

11

(Okla. 1958).

## B.  Personal Injury

Presumably in an effort to avoid the bar to its recovery under Part I of the CGL

Policy, East Central argues that its claim is covered as a "personal injury" under Part II of

the Broad Form Comprehensive General Liability Endorsement to the CGL Policy.  Part

II of this endorsement, which deals with the coverage of personal injuries, explains that

Liberty

> will pay on behalf of the insured all sums which the insured shall become
> legally obligated to pay as damages because of <u>personal injury</u> or
> advertising injury to which this insurance applies, sustained by any person
> or organization and arising out of the conduct of the named insured's
> business, within the policy territory.

Aplt's App., vol. II, Ex. F at 388 (emphasis added).  The endorsement defines a personal

injury as an

> injury arising out of one or more of the following offenses committed
> during the policy period:
> (1) false arrest, detention, imprisonment, or malicious prosecution;
> (2) wrongful entry or eviction or <u>other invasion of the right of private
> occupancy</u>;
> (3) a publication or utterance
> >  (a) of a libel or slander or other defamatory or disparaging material, or
> >  (b) in violation of an individual's right of privacy.

<u>Id.</u> at 389 (emphasis added).

East Central claims that it has suffered a personal injury as defined by paragraph

(2) above, entitling it to coverage under Creek County Well Service's CGL Policy with

Liberty. Specifically, it argues that Creek County Well Service invaded its "right of private occupancy to maintain its electrical system *on its easement* without third-party interference," see Aplt's Br. at 10, when Creek County Well Service's employees and equipment came within six feet of its power lines. East Central maintains that this "right of private occupancy" was created by its "right-of-way easement," which extends fifteen feet on either side of its power lines, see Aplt's App., vol. II, Ex. G at 646, and by Oklahoma's Six-Foot Rule, Okla. Stat. tit. 63, § 981, which prohibits anyone from causing himself or his equipment to come within six feet of a power line.[4]

The definition in an insurance contract of a personal injury as an "invasion of the right of private occupancy" has not previously been interpreted under Oklahoma law. Therefore, in predicting how the Oklahoma Supreme Court would interpret this provision, we must, as would the Oklahoma Supreme Court, determine the best-reasoned

_____

[4]Section 981 provides,

No person, firm, corporation or association shall, individually or through an agent or employee and no person as an agent or employee of any person, firm, corporation or association, shall perform or permit any agent or employee to perform any function or activity upon any land, building, highway, or other premises, when it is possible during the performance of such activity for any person or employee engaged in performing work connected with or related to such function or activity to move to or to be placed in a position within six (6) feet or any high voltage overhead electrical line or conductor, or when it is possible for any part of any tool, equipment, machinery or material to be used by any such person or employee to be brought within six (6) feet of any such overhead high voltage line or conductor through any lateral, vertical or swinging motion during the performance of such function or activity.

Okla. Stat. tit. 63, § 981.

13

interpretation and then apply it to the present case. See Caribou Four Corners, Inc. v. Truck Ins. Exch., 443 F.2d 796, 801 (10th Cir. 1971). In this effort, we are guided by other states' interpretations of the identical personal injury definition in an insurance policy. Cf. Walker, 329 P.2d at 856 (concluding that a New Mexico case "furnishes no answer to the questions or the propositions here involved" because it "does not discuss the specific provisions . . . of the [insurance] policy"); Hartford Accident & Indem. Co. v. Pacific Mut. Life Ins. Co., 861 F.2d 250, 252 (10th Cir. 1988) (holding that cases construing policy coverage are authoritative only if they "involve the same language or the same version of the standard form embodied in the policy under consideration").

### 1. The definition of "personal injury" at issue is not ambiguous.

We must first determine whether the phrase "other invasion of the right of private occupancy" is ambiguous. See, e.g., Phillips, 859 P.2d at 1104. Based on the plain language of the policy, we conclude, as have other courts, that it is not. See Martin v. Brunzelle, 699 F. Supp. 167, 171 (N.D. Ill. 1988) (applying Illinois law); Harbor Ins. Co. v. Anderson Leasing, Inc., No. CIV. A. 87C-DE-18, 1989 WL 112532, at *1 (Del. Super. Ct. Sept. 27, 1989) (applying Delaware law); Larson v. Continental Casualty Co., 377 N.W.2d 148, 150 (S.D. 1985) (applying South Dakota law). But see Titan Holdings Syndicate v. City of Keene, 898 F.2d 265, 272 (1st Cir. 1990) (holding that under New Hampshire law, this definition of personal injury is ambiguous).

The rule of ejusdem generis, a rule of contract interpretation, supports this

14

conclusion.  See State ex rel. Comm'rs of the Land Office v. Butler, 753 P.2d 1334, 1336

(Okla. 1987) ("The rules of interpretation of contract, . . . such [as] ejusdem generis, are

for use by the court to determine whether an ambiguity exists."), cert. denied, 488 U.S.

993 (1988).  The principle of ejusdem generis suggests that when interpreting a general

word that follows a series of specific words, "those specific words restrict the meaning of

the general."  Id.  In the policy provision at issue, paragraph (2) lists as personal injuries

"wrongful entry or eviction or other invasion of the right of private occupancy."  Aplt's

App., vol. II, Ex. F at 389 (emphasis added).  Thus, the specific personal injuries of

"wrongful entry or eviction" are followed by a more general personal injury, "other

invasion of the right of private occupancy."  Under the principle of ejusdem generis, the

words "'other invasion of the right of private occupancy' are intended to encompass

actions of the same general type as, though not specifically embraced within, 'wrongful

entry or eviction.'" Martin, 699 F. Supp. at 170 (applying Illinois law).

Actions for "wrongful entry or eviction" deal with violations of one's real property

rights.  See Okla. Stat. tit. 41, § 123 (providing a tenant with an action for wrongful

eviction), interpreted in Wagoner v. Bennett, 814 P.2d 476, 481 (Okla. 1991); Okla. Stat.

tit. 41, § 124 (providing a tenant with an action when a landlord makes an unlawful

entry).  Therefore, any "other invasion of the right of private occupancy" is appropriately

interpreted as also requiring an invasion of a real property right.

The clear weight of authority in other courts defines this term precisely as we have

15

suggested.  See Red Ball Leasing, Inc. v. Hartford Accident & Indem. Co., 915 F.2d 306, 312 (7th Cir. 1990) (applying the rule of ejusdem generis to the personal injury definition of "other invasion of the right of private occupancy" to determine that under Indiana law, it "precludes coverage for anything other than invasions of real property"); Martin, 699 F. Supp. at 170 (applying the principle of ejusdem generis to the personal injury definition of "other invasion of the right of private occupancy" to determine that under Illinois law, it "provides coverage only if there exists a landlord-tenant relationship or if the plaintiff has a 'vested property right'"); County of Columbia, 595 N.Y.S.2d at 991 (applying the principle of ejusdem generis to the personal injury definition of "other invasion of the right of private occupancy" to determine that under New York law, it is "limited to liability for purposeful acts aimed at dispossession of real property by someone asserting an interest therein"); Waranch v. Gulf Ins. Co., 266 Cal. Rptr. 827, 829 (Cal. Ct. App. 1990) (holding that under California law, "policy language referring to wrongful entry, eviction and invasions of the right of private occupancy pertains to torts against the real property of another); Nichols v. Great Am. Ins. Cos., 215 Cal. Rptr. 416, 421-22 (Cal. Ct. App. 1985) (same); Harbor Ins. Co., 1989 WL 112532, at *1 (holding that under Delaware law, the policy's definition of personal injury as "wrongful entry or eviction or other invasion of the right of private occupancy" applies "only to damages incurred as a result of an invasion of an interest in real property").

Instead of creating an ambiguity, the term "invasion of the right of private

16

occupancy" is included in insurance policies simply to provide a "catch-all" category of offenses of the same general type as "wrongful entry or eviction." As explained by the court in <u>Martin</u>,

> Absent a catch-all phrase such as "or other invasion of the right of private occupancy," an insurer could resist coverage for actions that did not fit within th[e] precise meanings [of the terms "wrongful entry or eviction"], <u>yet would clearly seem within the same class of conduct intended to be insured against</u>. Then a court confronted with such resistance would be forced to choose between denying coverage or bending the "wrongful entry or eviction" language out of shape to provide the insured with coverage.

<u>Martin</u>, 699 F. Supp. at 170 (emphasis added).

**2. East Central has not established a claim for "personal injury" under the CGL Policy.**

To avoid summary judgment, East Central must have alleged facts that support a claim that Creek County Well Service committed the offense of invading East Central's private right of occupancy. <u>See</u> <u>Liberty Bank v. Travelers Indem. Co.</u>, 870 F.2d 1504, 1508 (9th Cir. 1989) (holding that to apply the personal injury endorsement, Montana law requires the complaint to allege facts establishing the elements of one of the enumerated torts listed under the insurance policy's definition of personal injury). To determine whether East Central has succeeded in doing this, we must look to the facts alleged in East Central's answer to Liberty's complaint, irrespective of how East Central legally characterizes those facts. <u>See</u> <u>Pearson Servs., Inc.</u>, 937 F.2d at 403 (holding that the plaintiff's asserted legal basis for coverage "is irrelevant to the determination of whether

17

[the insurance] policy provides coverage," and instead looking to the facts underlying the claim for coverage); County of Columbia, 595 N.Y.S.2d at 990 ("[T]he issue is not whether a nuisance or trespass claim may possibly fit within the policies' personal injury coverage but whether the facts alleged in [the] complaint do.").

East Central has not alleged that Creek County Well Service interfered with a real property right that it holds, as is required by the definition of personal injury that it seeks to utilize. Instead, it has claimed that its easement in combination with the Six-Foot Rule gave it a right "to maintain its electrical system on its easement without third party interference." See Aplt's Br. at 10. Neither its easement nor the Six-Foot Rule creates in East Central the kind of real property right contemplated by the policy.

An easement does not vest title in its possessor. Lindhorst v. Wright, 616 P.2d 450, 454 Okla. Ct. App. 1980); City of Elk City v. Coffey, 562 P.2d 160, 163 (Okla. Ct. App. 1977). Instead, it "is a right to make use of another's land for some definite and limited purpose." Bonner v. Oklahoma Rock Corp., 863 P.2d 1176, 1181 (Okla. 1993); accord Story v. Hefner, 540 P.2d 562, 566 (Okla. 1975); Lindhorst, 616 P.2d at 454. Here, East Central was granted an easement for a "definite and limited purpose," Bonner, 863 P.2d at 1181:

> to place, construct, operate, repair, maintain, relocate, and replace thereon
> poles, fixtures, wires, cables, guys, transformers and other necessary
> appurtenances for the overhead distribution of electrical and communication
> services, and to cut and trim trees and shrubbery to the extent necessary to
> keep them clear of said electric line or system and to cut down from time to
> time all dead, weak, leaning or dangerous trees as determined by the

18

Cooperative that are tall enough to strike the wire in falling.

Aplt's App., vol. II, Ex. G at 646. This limited right "to make use of another's land," see Bonner, 863 P.2d at 1181, does not vest East Central with the right of private occupancy in that land. Thus, any interference with this easement by Creek County Well Service does not constitute an "invasion of [a] right of private occupancy" under the personal injury definition of Creek County Well Service's CGL Policy. See Aplt's App., vol. II, Ex. F at 389.

Although the Six-Foot Rule has not previously been interpreted in this context,[5] we do not believe that the Oklahoma Supreme Court would determine that the Rule's prohibition of any activity within six feet of an owner or operator's power line creates in that owner or operator a real property right in the six feet surrounding its power line. The Six-Foot Rule clearly does not grant East Central title to the airspace within six feet of its lines, but instead is designed to penalize those who come within that airspace, see Okla. Stat. tit. 63, § 984 (making violation of the law a misdemeanor); Trett v. Oklahoma Gas & Elec., 775 P.2d 275, 279 (Okla. 1989) (citing Okla. Stat. tit. 63, § 984), and to

---

[5]The Oklahoma Supreme Court has interpreted only the statute's constitutionality, see Kimery v. Public Serv. Co., 622 P.2d 1066, 1070-71 (Okla. 1980) (holding that the Six-Foot Rule, Okla. Stat. tit. 63, § 981, is constitutional), and its interaction with Oklahoma's Workers' Compensation Act, Okla. Stat. tit. 85, § 12, see Ring v. Public Serv. Co., 775 P.2d 1356, 1357 (Okla. 1989) (holding that the immunity afforded an employer under the Workers' Compensation Act, Okla. Stat. tit. 85, § 12, does not shield it from liability to a power company for a loss paid by the employer because of a violation of the Six-Foot Rule, Okla. Stat. tit. 63, § 981); Travelers Ins. Co. v. L.V. French Truck Serv., 770 P.2d 551, 553 (Okla. 1988) (same).

19

indemnify power companies for "all liability" that they incur as a result of violations of the Rule, see Okla. Stat. tit. 63, § 984 (making violators of the law liable to the owner or operator of the power line "for all damage to [the owner's or operator's] facilities and for all liability incurred by [the] owner or operator as a result of any . . . accidental contact").

### III.  CONCLUSION

Through its claim that the personal injury provision in Part II of the Broad Form Comprehensive General Liability Endorsement to the CGL Policy provides coverage for its loss, East Central has attempted to expand the coverage of Creek County Well Service's CGL Policy in an effort to secure payment of a greater portion of its $4,000,000 judgment against Creek County Well Service.  However, under the CGL Policy between Creek County Well Service and Liberty, Creek County Well Service paid premiums to cover a defined set of risks, and Liberty cannot now be forced to expand that set.  Cf. Martin, 699 F. Supp. at 171 (refusing to expand coverage beyond the categories of coverage specified in the policy for which the insured paid a premium).  Because East Central's claim is one for indemnification for bodily injuries, specifically excluded under the CGL Policy, we AFFIRM the district court's grant of summary judgment to Liberty on its declaratory judgment claim.